CATHERINE G. ARMSTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

W. H. ARMSTON CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 14186, 14187. Promulgated March 31, 1949.

*Warren F. Wattles, Esq.*, for the petitioners.
*F. L. Van Haaften, Esq.*, for the respondent.

542

OPINION.

LEECH, *Judge*: The principal issue relates to the propriety of the respondent's action in disallowing petitioner W. H. Armston Co., de-deductions in the respective taxable periods for the amounts paid or accrued as rentals for the use of certain equipment under an agreement with Catherine G. Armston. Sec. 23 (a) (1) (A), I. R. C.

Of course the mere designation of these amounts as rental does not legally characterize them as such. Nor does the fact that as between the company and Mrs. Armston, the parties to the agreement, the obligation to pay may have been enforceable, render the payment deductible as rent or otherwise under section 23 (a) (1) (A). *Interstate Transit Lines*, 44 B. T. A. 957; affd., 130 Fed. (2d) 136; affd., 319 U. S. 590; *Deputy* v. *duPont*, 308 U. S. 488.

The question here is whether, in fact, the payments in controversy were deductible as rent or otherwise, under the cited statute. In answering that question, one fundamental inquiry would seem to be whether, in fact, i. e., for tax purposes, petitioner W. H. Armston Co.'s right to use the equipment in controversy during the taxable periods belonged to it as an incident of its admitted original ownership of the equipment, or by reason of the purported lease from Catherine G. Armston. The answer to this inquiry depends, we think, on whether, under the present circumstances, the alleged sale by petitioner W. H. Armston Co. to Catherine G. Armston may be recognized as transferring the unrestricted control and use of the equipment. In our opinion, that "sale" can not be so recognized.

The purported sale of the equipment to Mrs. Armston and the leasing back of the property to the corporation were not isolated transactions. They were, as planned, integral steps in a single transaction and must be so considered here. Cf. *Commissioner* v. *Ashland Oil & Refining Co.*, 99 Fed. (2d) 588; certiorari denied, 306 U. S. 661; *Diescher* v. *Commissioner*, 110 Fed. (2d) 90; certiorari denied, 310

U. S. 650; *Helvering* v. *Alabama Asphaltic Limestone Co.*, 315 U. S. 179; *Heller* v. *Commissioner*, 147 Fed. (2d) 376; certiorari denied, 325 U. S. 868; *Koppers Coal Co.*, 6 T. C. 1209. So considered, we find it to be nothing more than a mere assigning of corporate income to her. The record, we think, amply supports such premise.

W. H. Armston Co. was engaged in construction work, chiefly road building, cleaning land, and removing dirt, and, during the rearmament program incident to World War II, in the construction of air fields. It owned a considerable amount of heavy equipment suitable to the work in which it was engaged. Of its outstanding capital stock, 60 per cent was then owned by Catherine G. Armston and 40 per cent by her husband, W. H. Armston. As of December 31, 1942, the corporation's financial statement showed surplus and undivided profits of $278,371.16. Due, however, to the purchase of a considerable amount of heavy equipment, its working capital had been reduced. The situation was discussed between Armston and his wife, with the result that a plan was adopted in substance as follows: Mrs. Armston agreed to purchase specified heavy equipment then owned by the corporation, with the understanding that the corporation would lease it from her at the ceiling rental rate fixed by the Office of Price Administration.

Mrs. Armston had no substantial funds with which to make the purchase of the equipment which the corporation purported to sell. The funds which Mrs. Armston borrowed from the bank for the alleged purchase were actually repaid from moneys earned by the use of the the equipment under contracts which the corporation was then performing. At the time the arrangement was entered into, both Mrs. Armston and her husband well understood that the current earnings from the use of such equipment would enable the loan to be repaid in the course of the next two or three months. The agreement became effective on April 1, 1943, and by July 1, 1943, the alleged rentals paid to Mrs. Armston aggregated $33,267.45, whereas the agreed purchase price was $33,667.36. On April 1, 1943, when the transaction became effective, the corporation had already set aside $13,377.04 in earnings, which were ultimately paid to Mrs. Armston as alleged rentals. Very shortly after Mrs. Armston paid over the proceeds of the loan to the corporation, it repaid a loan of $15,000 to Armston. Also in the month of April, the corporation paid to Mrs. Armston the additional sum of $6,784.41 as alleged rentals. These amounts aggregate $35,161.45, which is considerably in excess of the consideration for the purported sale.

Thus the corporation, instead of receiving the alleged needed working capital, in effect, as was intended from the inception of the transaction, furnished the funds with which Mrs. Armston is said to

have purchased the equipment from petitioner W. H. Armston Co. And the contention that this petitioner was benefited by receiving needed working capital is obviously contrary to the fact.

We conclude that there was no presently recognizable sale or transfer of the right to the use of the equipment to Mrs. Armston, that petitioner corporation never in fact parted with that right, and that thus no valid obligation on the part of the corporation to pay rentals to Mrs. Armston existed. In such situation, the payment of so-called rentals did not constitute ordinary and necessary expenses of carrying on the business of petitioner corporation within the purview of section 23 (a) (1) (A) of the Internal Revenue Code. These alleged rental payments were in effect distributions of corporate earnings in the nature of cash dividends.

The facts in the instant case are indistinguishable in principle from those involved in the case of *Ingle Coal Co.*, 10 T. C. 1199. There a corporation was mining coal under a 20-year lease providing for the payment of a 5-cent royalty to the lessor. The stockholders entered into a plan to dissolve the corporation and distribute the mining lease in kind to the stockholders. As a part of the plan, the stockholders were to form a new corporation, to which the mining lease was to be transferred under an agreement to pay its stockholders an overriding royalty of 25 per cent. We held the payment of these alleged overriding royalties was, in fact, a distribution of earnings, and denied the new corporation a claimed deduction of the amount of the overriding royalty as not constituting an ordinary and necessary expense of carrying on its business under section 23 (a) (1) (A) of the code. A similar rationale has been applied in many cases involving transactions of like import. The *Ingle Coal Co.* case, *supra*, was followed in *Gramberg Equipment, Inc.*, as late as 11 T. C. 704 (Oct. 28, 1948). See also *Smith* v. *Hoey* (Dist. Ct. N. Y.), 34 A. F. T. R. 1704, unreported officially; affd., 153 Fed. (2d) 846; *Manning* v. *Gagne*, 108 Fed. (2d) 718; *Deputy* v. *duPont, supra; Paul G. Greene*, 7 T. C. 142; *A. A. Skemp*, 8 T. C. 415. We are aware of the decision of the Circuit Court of Appeals for the Seventh Circuit in the *Skemp* case (168 Fed. (2d) 598), reversing this Court. However, we respectfully refrain from following that court, and adhere to our own decision. See *Interstate Transit Lines* v. *Commissioner*, 319 U. S. 590; *Deputy* v. *duPont, supra*. On this issue we sustain the respondent's determination.

This conclusion renders moot the further issue respecting the respondent's disallowance of a claimed operating loss in 1945 as a carryback to the year 1943, and the further issue respecting his refusal to allow a claimed unused excess profits tax credit for 1945 as a carryback to 1943. The concessions of the respective parties as to a certain other issue will be given effect in the recomputation under Rule 50.

In Docket No. 14186, in which Catherine G. Armston is the petitioner, the contention is made that, if the corporate petitioner is denied a deduction of the amounts paid or accrued as rentals, an overpayment be found with respect to her, since she paid the tax upon the amounts paid to her as rentals. We do not agree with this contention. The payments which she received from the corporation were, as we have held, in fact distributions of corporate earnings to her and were made without restriction upon her right to use and enjoy the same. They, therefore, constituted taxable income to her. We therefore sustain the respondent's determination in including such amounts in her income.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

---

BLACK, *J.*, concurring in the result only: I concur in the result reached by the majority opinion, but I do not concur in all that is said in the opinion.

I agree that the transactions between W. H. Armston Co. and Catherine G. Armston relating to equipment allegedly sold by the corporation to Catherine and in turn leased back by her to the corporation seem to fall in principle within the ambit of *Ingle Coal Co.*, 10 T. C. 1199; now on review, C. A., 7th Cir. I think that case was correctly decided and furnishes authority for the result reached by the majority opinion here.

I do not agree that the facts in *A. A. Skemp*, 8 T. C. 415, cited in the majority opinion, were at all similar to those here. I dissented in the *Skemp* case and pointed out the reasons upon which I based my dissent. These need not be repeated here. It is sufficient to say that I do not agree that the Seventh Circuit erred in reversing *A. A. Skemp*, *supra*. On the contrary, I think its reversal was correct. Therefore, while agreeing that the result here reached is justified under the authority of *Ingle Coal Co.*, *supra*, I do not agree with the majority opinion wherein it says:

* * * We are aware of the decision of the Circuit Court of Appeals for the Seventh Circuit in the *Skemp* case (168 Fed. (2d) 598), reversing this Court. However, we respectfully refrain from following that court, and adhere to our own decision. * * *

I do not think there is any occasion for that to be said in the instant case, and I do not wish to be understood as agreeing to it. Therefore, I concur in the result only.

---

ARUNDELL, *J.*, dissenting: It would seem to me that the question posed in this case is whether or not there was a definitive disposition

of the machinery by the corporation to Catherine Armston. If, as a result of the transaction, Mrs. Armston became the owner of the property, the rental paid for its use in the business, at OPA prices, would seem to constitute an ordinary and necessary expense. The reason advanced for concluding that the rental may not be deducted is that the sale to Catherine Armston was coupled with an agreement to lease the property back to the corporation, and the net effect of such a transaction is that the seller continues "for tax purposes" to own the property. It is true that this reasoning finds support in *A. A. Skemp*, 8 T. C. 415, but that decision was reversed by the Seventh Circuit Court of Appeals in *Skemp* v. *Commissioner*, 168 Fed. (2d) 598, and, as in my opinion the reasoning of the higher court is correct, I disagree with the conclusion reached by the majority in this case. The majority opinion recognizes that as between the parties to the transaction the obligation of the company to pay a rental may be enforced.

VAN FOSSAN and MURDOCK, *JJ.*, agree with this dissent.