OPINION. Mtjlroney, Judge: The principal issue is whether the Finley-Frazier partnership, consisting of Jerline Dick Finley and Gladys H. Frazier, is to be recognized for Federal income tax purposes. Materials, a corporation organized to engage in general construction work and to supply materials used in construction work, was controlled by petitioner and J. Floyd Frazier. In 1941 there took place a series of integrated steps which were, briefly, as follows: (1) Petitioner and J. Floyd Frazier transfer their stock in Materials to their wives; (2) Materials is liquidated and the assets, including machinery, equipment, contracts, and accounts receivable, are distributed to the wives; (3) the wives form an alleged partnership, Finley-Frazier, for the purpose of renting construction equipment and selling gravel; and (4) petitioner and J. Floyd Frazier form a partnership, Construction, to engage in general construction work. The various steps all took place within a week. Construction thereafter used the construction equipment which was in the name of Finley-Frazier and made payments called equipment rentals over the tax years here involved to Finley-Frazier. Construction also obtained its gravel requirements from various tracts which were in the name of Finley-Frazier and made payments designated as gravel royalties to Finley-Frazier. We are convinced from a study of all the evidence that the various steps taken by the parties cannot be recognized for Federal income tax purposes. Petitioner and J. Floyd Frazier, individually and through their partnership, Construction, exercised complete control over the assets which had been owned by Materials and had then been ostensibly distributed to their wives. It is not essential to list all the items of evidence which show persuasively that the petitioner and J. Floyd Frazier did not at any time intend to give away the ownership and control over the assets of Materials, but some of the more significant items can be mentioned. No leases covering the use of the various items of construction equipment by Construction were ever prepared, nor is there any evidence of any binding agreements of any other sort covering the use of such equipment; Construction made no attempt to keep records indicating the extent of its liability for the use of such equipment; the affairs of Finley-Frazier were completely in the hands of petitioner and J. Floyd Frazier; the almost total unfamiliarity of the wives with the affairs of Finley-Frazier; and the unrestricted control by petitioner and J. Floyd Frazier over the maintenance and use of the various items of equipment without any attempt to make any accounting to Finley-Frazier. This unrestricted control of petitioner and J. Floyd Frazier over the affairs of Finley-Frazier extended to the various tracts of land, with the exception of the Newcastle farm, used to quarry gravel, and consequently the gravel royalties paid by Construction to Finley-Frazier may be disregarded as without substance. Petitioner has not introduced evidence sufficient to enable us to make a contrary finding. We have here nothing more than an attempt to shuffle income around within a family group. A similar attempt was before this Court in Catherine G. Armston, 12 T. C. 539, affirmed sub nom. Armston Co. v. Commissioner, 188 F. 2d 531. The Court of Appeals said, at page 533: The evidence here conclusively reveals that the Company’s right to use the equipment supposedly sold to Catherine Armston was in no wise affected by the alleged transfer of title. The only logical motive and purpose of the arrangement under consideration was the creation of “rentals”, which would form the basis for a substantial tax deduction, and thereby reduce the Company’s income and excess profits taxes from the year 1943. It was merely a device for minimizing tax liability, with no legitimate business purpose, and must therefore be disregarded for tax purposes. * * * We also regard the alleged gifts of some 19 trucks in 1942 and 1943 by Jerline Dick Finley and Gladys H. Frazier to their children, Robert Wesley Finley, Jacqueline Finley,' and Jay Frazier, as without substance. Petitioner and J. Floyd Frazier still maintained unrestricted control over the use and maintenance of such trucks and there were no arm’s-length attempts by the children to rent or otherwise use such equipment. We are persuaded from all the evidence that this alleged gift was nothing more than an attempt on the part of the family groups to atomize their income still further. It was a formal transfer which must be disregarded for tax purposes. Hilda M. Royce, 18 T. C. 761; Catherine G. Armston, supra. Some of the equipment rentals were paid by Construction directly to Jerline Dick Finley and Gladys H. Frazier rather than to Finley-Frazier. We do not consider these payments in any different light from the payments designated as rentals and paid directly to Finley-Frazier. Some of the equipment held in the name of Finley-Frazier was sold at various times in 1942, 1943, and 1944 and the capital gains reported on the partnership returns of Finley-Frazier for those years. In view of our finding as to the nature of the Finley-Frazier partnership we regard these gains, as did the respondent, as gains attributable to Construction, and through Construction, to the petitioner, to the extent of his distributive share of the income of Construction for those years. Respondent is sustained in his dis-allowance to Construction of the equipment rental and gravel royalty payments and the corresponding increase in petitioner’s distributive share of income from Construction. Construction deducted certain amounts in the years 1942, 1943, and 1944 as salary payments to Robert Wesley Finley and Jay Frazier. Identical amounts were paid to them in each of the years; $2,540 in 1942, $2,625 in 1943, and $600 in 1944. There is some evidence that the two did perform some work for Construction during portions of this period. Both of them were full-time university students in 1942 and 1943. Robert Wesley entered the Armed Forces in the fall of 1943. Jay Frazier, during 1943, was enrolled in an accelerated academic program with classes throughout the year. Both testified, but they were vague as to hours worked, rates of pay, and other pertinent details. No time records or payrolls of Construction were introduced in evidence which would give this Court some indication of the amount of work done by Robert Wesley and Jay. We have considered the meager evidence on this point, and bearing heavily against the petitioner who is responsible for the uncertainty, we have found that the proper deductions by Construction during the years here involved for salary payments to Robert Wesley and Jay Frazier are, for Robert, $1,000 in 1942 and $750 in 1943, and for Jay, $1,000 in 1942, $500 in 1943, and $600 in 1944. Cohan v. Commissioner, 39 F. 2d 540. Respondent disallowed the deduction by Construction in 1942 of $652.50 as a business expense on the ground that such expenditures represented purchases of whiskey by the partnership, which purchases were illegal under the Oklahoma statutes. Under Oklahoma statutes it is unlawful within the State to traffic in intoxicating liquors.[1] Petitioner concedes these expenditures were for whiskey, purchased for entertainment and the promotion of goodwill. It is well settled that expenditures of this nature, which are contrary to the State law, are not deductible as ordinary and necessary business expenses. Boyle, Flagg & Seaman, Inc., 25 T. C. 43; Lorraine Corporation, 33 B. T. A. 1158. Respondent disallowed the deduction by Construction of payments in the year 1942 amounting to $1,484.50 on the ground that such payments were made to officials and employees of Oklahoma County, Oklahoma, and as such are in violation of public policy and therefore not deductible. Respondent argues that these payments to county officials were made to influence such officials in the performance of their official duties. Payments made to obtain political influence are not deductible expenses. Harden Mortgage Loan Co., 47 B. T. A. 1043, affd. 137 F. 2d 282, certiorari denied 320 U. S. 791; T. G. Nicholson, 38 B. T. A. 190. Petitioner has not met his burden of proof in establishing that these payments to the various officials were not for the sole purpose of obtaining political influence in connection with county construction work. In Harden Mortgage Loan Co., supra, the Court of Appeals said: Payments made for exerting political influence are not ordinary and necessary business expenses. Tbe burden was upon tbe taxpayer to establish its right to the deduction. It may be that some portion of the amounts paid to the partnership was actual -selling commissions, but the burden of proving the deductible amounts and segregating them from the nondeductible was upon the taxpayer and it did not meet that burden. We conclude that the Tax Court did not err in disallowing the deduction of the amounts paid the partnership, as ordinary and necessary business expenses. We hold that the respondent was correct in disallowing the deduction of the expenditures in the year 1942 amounting to $1,484.50. Petitioner claimed deductions of $9,466.52 in 1942, $9,865.32 in 1943, $6,758.89 in 1944, and $9,009.68 in 1945 as promotional, traveling, and entertainment expenses. These amounts do not represent reimbursements to petitioner from Construction. Eespondent disallowed these deductions in full on the ground that they were unsubstantiated. Petitioner’s testimony is the only evidence with respect to. these claims. Such testimony does not reveal the exact amounts expended, other than estimates, the dates of the expenditures, the persons entertained, or the nature of the various expenditures. Petitioner did give some testimony as to some 8 or 10 construction jobs going on at the same time at distances of from 8 to 100 miles from the main office of Construction and the necessity of supervising such jobs. The evidence before us is not very satisfactory and we have grave doubts that all the amounts claimed were ordinary and necessary expenses in connection with the business of the partnership, but we are convinced that petitioner did pay out some amounts for entertainment and travel expenses in connection with work of Construction for which he was.not reimbursed. Frederick S. Klein, 25 T. C. 1045. Applying the doctrine of Cohan v. Commissioner, supra, and again bearing against the petitioner who is responsible for the meager record, we hold that the petitioner is entitled to deductions for unreimbursed travel and entertainment expenses for the years 1942 through 1945 in amounts equal to 33½ per cent of the amounts claimed by the petitioner on his returns for those years. Eespondent disallowed deductions taken by Jerline Dick Finley for salary paid to Harry Berry, her brother-in-law, during the years here involved, for work done by him on the Arcadia farm in which she owned a one-half interest. Also disallowéd were deductions for various expenses and losses claimed by Jerline Dick Finley in connection with the Arcadia farm during the years 1942 through 1945. Eespondent bases his disallowance of these deductions on the ground that this was a family farm, and that the expenditures were personal in nature and therefore nondeductible. Sec. 24 (a) (1) and (a) (2), 1939 Code. There is no evidence from which this Court can consider ffris farm as a business venture. Jerline Dick Finley, according to her testimony, purchased the one-half interest in 1941 to help her sister and brother-in-law out of certain financial difficulties. There is no indication that subsequent to this the farm was devoted to producing income. It was not a trade or a business of any kind. Certain expenditures were made over the years 1942 through 1945 in remodeling the farmhouse and the barn and in improving the state of the soil, but these improvements, standing alone, are not indicative of profit-making motives. An examination of the income tax returns filed by Jerline Dick Finley for the years 1942 through 1945 does not reveal, in connection with the farm, any income from any source. We have examined, the evidence carefully and conclude that the expenditures and losses incurred by Jerline Dick Finley in connection with the Arcadia farm during the years 1942, 1943, 1944, and 1945 were personal in nature and not deductible under section 23 (a) or (e) of the 1939 Internal Revenue Code. Decisions will be entered wider Ride 50. Okla. Stat. Ann. tit. 37, Intoxicating Liquors, ch. 1, sec. 1, p. 480: Sec. 1. Manufacture, sale or furnishing— * * * It shall be unlawful for any person, individual or corporation to furnish * * * any spirituous, vinous, fermented or malt liquors, * * * or to manufacture, sell, barter, give away or otherwise furnish any liquors or compounds of any kind or description whatsoever whether medicated or not which contain more than three and two-tenths (3.2%) per cent of alcohol, measured! by weight, and which is capable of being used as a beverage, * * *. A violation of any provisions of this section shall be a misdemeanor, and shall be punished by a fine * * *, and by imprisonment * * * Oklahoma’s prohibition ordinance is as follows (Prohibition Ordinance, Ratified Sept. 17, 1907. In force Nov. 16, 1907, Okla. Stat. Ann., Constitution, arts. I-IV, p. 577) : The manufacture, sale, barter, giving away, or otherwise furnishing, except as hereinafter provided, of intoxicating liquors within this State, or any part thereof, is prohibited for a period of twenty-one years from the date of the admission of this State into the ünion, and thereafter until the people of the State shall otherwise provide by amendment of this Constitution and proper state legislation. Any person, individual or corporate, who shall manufacture, sell, barter, give away, or otherwise furnish any intoxicating liquor of any kind, * * * contrary to the provisions of this section, » * * or who shall ship or in any way convey such liquors from one place within this State to another place therein, except the conveyance of a lawful purchase as herein authorized, shall be punished, on conviction thereof, by fine * * * and by imprisonment * * *