WENDELL W. and LIDA D. VAUGHN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Vaughn v. Commissioner
Docket No. 33011-83.
United States Tax Court
T.C. Memo 1986-578; 1986 Tax Ct. Memo LEXIS 29; 52 T.C.M. (CCH) 1133; T.C.M. (RIA) 86578; December 8, 1986. *29 Ps, who operated a general contracting business, reported their business income using the cash method of accounting.During 1976, 1977, and 1978, Ps deposited some business receipts into their personal savings accounts or used some business receipts to purchase certificates of deposit. Such receipts were not reported as income in the year received. The Commissioner discovered this unreported income and determined deficiencies and additions to tax for fraud under sec. 6653(b), I.R.C. 1954. Held: (1) Ps conduct with respect to such unreported income did not rise to the level of intentional wrongdoing required for finding fraud. (2) The statute of limitations bars assessment of deficiency for 1978. (3) Tax treatment of certain items of gross receipts determined. (4) Ps may not change their method of accounting without the consent of the Commissioner. (5) Ps are not entitled to certain depreciation deductions for years still in issue. (6) Ps are not entitled to deductions for home office expenses. (7) Ps are entitled to deductions for estimated labor costs paid in cash, under Cohan rule. William R. Cousins III, for the petitioners. William P. Hardeman, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined the following deficiencies in, and additions to, the petitioners' Federal income taxes: Addition to tax
Sec. 6653(b)
Year
Deficiency
I.R.C. 1954 [1]
1976
$24,498.06
$12,249.03
1977
73,494.97
37,825.77
1978
8,391.39
4,195.70
After numerous concessions by both parties, the issues remaining for decision are: (1) Whether the petitioners are liable for the addition to tax for fraud under section 6653(b) for 1976, 1977, and 1978; (2) whether the statute of limitations serves to bar the assessment and collection of the deficiency for 1978; (3) whether the petitioners understated their gross receipts and overstated their cost of goods sold on their joint Federal income tax returns for 1976, 1977, and 1978; (4) whether the petitioners may unilaterally change their method of accounting on their amended joint Federal income tax return for 1977 *33 and on subsequent returns; (5) whether the petitioners are entitled to deductions for depreciation on their joint Federal income tax returns for 1976, 1977, and 1978; (6) whether the petitioners are entitled to deductions for expenses of maintaining an office in their home for 1976, 1977, and 1978; and (7) whether the petitioners are entitled to deductions for certain expenses which were not claimed on their original returns for 1976, 1977, and 1978. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioners, Wendell W. and Lida D. Vaughn, resided in Dallas, Texas, at the time the petition was filed in this case. They timely filed their joint Federal income tax returns for 1976, 1977, and 1978 with the Internal Revenue Service Center in Austin, Texas. Mr. Vaughn has been an electrical subcontractor in Dallas, Texas, for over 30 years. During that time, he performed electrical subcontracting work on homes, churches, supermarkets, radio stations, and theatres. In 1976, he also became a general contractor. His general *34 contracting work involved converting older, single-screened theatres into multi-screened theatres. Before a theatre could be so converted, the interior had to be completely gutted. Such a job was dirty and tedious. Mr. Vaughn often had trouble finding help to perform this work on a regular basis. In such cases, he was forced to employ day laborers, who demanded to be paid in cash. Mr. Vaughn did not keep accurate records of such cash payments. During the years at issue, he was responsible for approximately one dozen conversions of theatres in Texas, Louisiana, and Oklahoma. Mr. Vaughn operated his business as a sole proprietorship. Commencing in 1961, he hired Daniel D. Mulholland to prepare his tax returns and to keep his books.Mr. Mulholland used the cash method of accounting to record the revenues and expenses of the business. He informed Mr. Vaughn that he needed the business's bank statements, check stubs, deposit slips, and paid invoices and bills to keep the books. After the petitioners were married in 1970, Mrs. Vaughn assumed the task of gathering the financial information to be given to Mr. Mulholland. Mr. Mulholland went over the accounting system with her and *35 similarly instructed her that the main things needed by him were bank statements, check stubs, deposit slips, and paid bills to keep the business's books. At first, Mrs. Vaughn also gave Mr. Mulholland information from the petitioners' savings accounts. After a time, Mr. Mulholland realized that no business receipts were being deposited in the savings accounts, so he told Mrs. Vaughn that he no longer needed to see the savings passbooks. Although Mrs. Vaughn only gave Mr. Mulholland the information he asked for, he had unrestricted access to all the records of the business. During the years in issue, the petitioners maintained a business checking account at Wynnewood Bank of Dallas. Mrs. Vaughn also maintained a personal checking account at First Realty Bank and Trust Company in Dallas. The Vaughns also maintained personal savings accounts at Wynnewood First State Bank of Italy, Texas, and First Texas Savings and Loan. The petitioners maintained two offices in their business -- an office at 3110 Dawson Street in Dallas, and an office in their home. Mr. Vaughn and Mrs. Bobbie Woods worked in the Dawson Street office. Mrs. Vaughn worked exclusively in the home office. The home *36 office was specially constructed for use as an office and contained a desk, a typewriter, some filing cabinets, and a photocopy machine. All mail to the company was received at the home office, since, on some occasions, mail sent to the Dawson Street office had been tampered with or was missing. During the years in issue, Mrs. Vaughn worked approximately 4 hours a day opening the mail, receiving checks, and preparing bank deposits. As Checks were received in the home office, Mrs. Vaughn photocopied the checks and sent the photocopies to Mrs. Woods in the Dawson Street office. In addition to her other duties, Mrs. Vaughn gathered check stubs (reflecting information concerning checks written by the Vaughns), deposit slips relating to the business checking account, check remittance advices (reflecting information in checks received by the Vaughns), and other business information into an envelope and gave the envelope to Mr. Mulholland each month. Mr. Mulholland used the material given to him by Mrs. Vaughn to prepare the cash disbursements journal, cash receipts journal, and general ledger. Mr. Mulholland periodically gave to the Vaughns adding machine tapes showing the balance *37 in each account in the general ledger. He also gave them quarterly financial statements. Mr. Mulholland disregarded the check remittance advices when preparing the business's books. He did so because he considered the bank deposit slips sufficient to record all the income received by the Vaughns. He never compared the remittance advices to the deposit slips. Mrs. Woods began working for the petitioners in 1972. She performed all her work at the Dawson Street office. Her responsibilities included delivering materials to job sites, answering the phone, and performing general office tasks. In addition, she typed invoices for all work performed. She sent the original invoice to the customer and retained a copy for her files. When Mrs. Woods received a photocopy of a check from Mrs. Vaughn, she pulled the invoice attributable to each check and stapled it to the photocopy. In this way, she knew what invoices remained outstanding. Mrs. Woods had little contact with Mr. Mulholland, although she occasionally gave him receipts from bills paid by her. Neither Mrs. Woods nor Mrs. Vaughn gave Mr. Mulholland copies of checks received. Mr. Vaughn had a ninth grade education. Mrs. *38 Vaughn graduated from high school. Neither of them had any training or experience in accounting or tax return preparation. They relied entirely on Mr. Mulholland to keep the business's books and to prepare their tax returns. They never questioned him about his work. They never asked to see the books which he maintained. They did not carefully examine the tax returns that he prepared for them. In fact, Mr. Mulholland believed that they would not have understood the books and returns if they had carefully examined them. Beginning in 1976, the petitioners' general contracting business became much more profitable, and the gross receipts increased dramatically. The Vaughns began to receive large progress payments from customers. These checks were intended to provide Mr. Vaughn with sufficient working capital to allow him to pay his suppliers and workers over the course of a large project. Since the checks were often received before any payments were required to be made, Mr. Vaughn decided to earn interest on the advances. He began to deposit these business receipts directly into one of the petitioners' savings accounts and to use business receipts to purchase certificates of *39 deposit. Since Mr. Mulholland was unaware of this practice, many of these receipts went unreported. When the Vaughns deposited a business receipt directly in a savings account, they made a notation in the savings passbook showing the source of the funds. In February 1976, the petitioners received a business check for $50,000.00 from Loews Corporation. They deposited $40,903.58 in the business account. They used the balance of $9,096.42 to pay off a business loan; the $9,096.42 was unreported on their tax return. Mrs. Vaughn included the remittance advice from this check in the monthly envelope given to Mr. Mulholland. On November 1, 1978, the Commissioner notified the petitioners that their 1976 joint Federal income tax return had been selected for examination. The examination was subsequently expanded to include the 1977 and 1978 taxable years. The examination was initially conducted by the Commissioner's agent, Sharif Amin. Mr. Amin worked at a desk provided to him at the Dawson Street office. He asked for and received copies of the Vaughns' bank deposit slips, check stubs, paid bills, and sales invoices. Mr. Mulholland and Mrs. Woods were on hand to help him find documents *40 and to answer questions. After a few days, Mr. Amin left the office and did not return. It was subsequently determined that he had left the employ of the Internal Revenue Service. The case was reassigned to Bonita Hicks. She resumed the examination on April 23, 1979. She had access to the same financial records that were given to Mr. Amin, including the monthly envelopes given to Mr. Mulholland. In addition, she was given the Vaughns' savings passbooks and a list of certificates of deposit which they had purchased with the omitted business receipts. Mr. Mulholland was again available to answer questions. On one occasion, Mrs. Hicks found herself working alone in the Dawson Street office. Since examining agents are prohibited from working at the taxpayer's office without a representative of the taxpayer present, she returned to her office and took some of the Vaughns' records with her.Mr. Vaughn had consented to the removal of the records. William E. Wills was hired to help the petitioners through the examination of their returns. Mr. Wills had the Vaughns file an amended Federal income tax return for 1977 which included some of the income that had not been reported on *41 the initial return. On the amended return, the Vaughns also changed their method of reporting income from the cash method to the completed contract method. The change was made on the recommendation of Mr. Wills, who believed that the completed contract method more accurately reflected the petitioners' income. The Vaughns did not receive the permission of the Commissioner to make such a change. The Commissioner's examination revealed the petitioners' practice of depositing business receipts directly into their savings accounts and using business receipts to purchase certificates of deposit. As a result of the examination, the petitioners' case was referred to the Criminal Investigation Division of the IRS in October 1979. The Vaughns were indicted on March 31, 1983, and tried for Federal income tax evasion for the years in issue in the United States District Court for the Northern District of Texas. A jury found both petitioners not guilty on July 28, 1983. The Vaughns owned about 30 acres of land near Winnsboro, Texas, which is approximately 100 miles from Dallas. On one part of the property, they have a cabin, a small pond, a pump house, and a storage shed. They used this *42 part of the property for recreation. In 1978, they built another storage shed and a small office building on a separate part of the property. The shed is closed on three sides, but is open in the front. It rests on a concrete slab approximately 25 to 30 feet wide by 90 feet long. The slab was constructed in 1976 at a cost of $1,856. The Vaughns used the shed to store materials left over from construction jobs and used the office building to store large, expensive tools. A notice of deficiency was sent to the petitioners on September 1, 1983, in which the Commissioner determined deficiencies in Federal income tax and additions to tax under section 6653(b) as set forth at the outset of this opinion. OPINION The petitioners have acknowledged that they underreported their income for the years in issue and have agreed that they are liable for much of the deficiencies determined by the Commissioner. However, they have challenged the addition to tax for fraud determined by the Commissioner, contending that the underreporting of income was unintentional. Thus, the primary issue for decision is whether the petitioners are liable for the addition to tax under section 6653(b). *43 Section 6653(b) provides that if any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of such underpayment. The Commissioner has the burden of proving, by clear and convincing evidence, that some part of the underpayment for each year is due to fraud. Sec. 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure.[2] To establish fraud, the Commissioner must show that the taxpayer intended to evade taxes which he knew or believed that he owed by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is never presumed, but rather must be established by affirmative evidence. *44 Beaver v. Commissioner,55 T.C. 85, 95 (1970). Since direct evidence of fraud is rarely available, circumstantial evidence may be considered. Spies v. United States,317 U.S. 492, 499 (1943); Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983). Fraud may properly be inferred where an entire course of conduct establishes the requisite intent. Rowlee v. Commissioner,supra.Our conclusion must be reached not on isolated pieces of testimony, but rather on the whole record. Kellett v. Commissioner,5 T.C. 608, 616 (1945). After careful consideration of the evidence before us, we hold that the Commissioner has failed to sustain his burden of proving fraud. The petitioners have conceded that some items of income were not deposited in their business checking account and that such items went unreported during the years in issue. However, the record shows that the Vaughns routinely supplied Mr. Mulholland with the information that he reguested and that they thought he needed to report their income accurately. In earlier years, they had furnished Mr. Mulholland with the records relating to their savings *45 accounts, but since no business deposits were included in those accounts at that time, Mr. Mulholland told the Vaughns that he did not need the records relating to the savings accounts. Subsequently, the Vaughns' business expanded, and they began receiving large advance payments which were not needed immediately for the payment of business expenses. It was natural for the Vaughns to invest those unused funds in their savings accounts or in certificates of deposit where they would earn interest. Obviously, the Vaughns should have advised Mr. Mulholland of the changes in their business practices and furnished him with the records concerning the savings accounts and the purchases of the certificates of deposit. However, we are satisfied that their failure to do so did not constitute a deliberate attempt to conceal the unreported income. Mr. Mulholland was normally furnished with the check remittance advices even though he had not requested them. He did not examine those advices because he understood that all of the business receipts had been deposited in the business checking account. However, if he had compared these remittance advices with the deposit slips from the business checking *46 account, he would have realized that some receipts had not been deposited and consequently had been unreported. For example, Mrs. Vaughn gave Mr. Mulholland the check remittance advice from the $50,000 check received from the Loews Corporation, but Mr. Mulholland testified that he only saw such advice during the course of the Commissioner's examination. He agreed that, had he seen it originally, he would have determined the source of the check and recorded the income properly. We do not mean to place the blame for the omission of these business receipts on Mr. Mulholland. Yet, the fact that the Vaughns supplied Mr. Mulholland with the check remittance advices is convincing evidence that they were not attempting to conceal income. Moreover, the Vaughns made notations in their savings passbooks indicating the source of each deposit, thus creating a paper trail which made it easy to identify the unreported business receipts. It is unlikely that the Vaughns would have made such a trail if they were attempting to conceal the income. In arguing that the petitioners should be liable for the addition to tax, the Commissioner contends that they fraudulently manipulated the accounting *47 system set up by Mr. Mulholland by failing to deposit all of their business receipts in the business checking account. The Vaughns have never denied that they failed to report all their income during the years in issue. However, we do not believe that the Vaughns attempted to hide the omitted business receipts. We were satisfied by the Vaughns' explanation that there was a very significant change in their business activities and that they, through lack of business sophistication, failed to recognize the need to furnish Mr. Mulholland with additional records concerning the new sources of income. The adding machine tapes and quarterly financial statements which Mr. Mulholland gave the Vaughns contained little useful information. It would have been difficult for even a person with accounting experience to have discovered the omissions. It would have been almost impossible for the Vaughns, who have only a limited knowledge of bookkeeping and tax preparation, to recognize the omissions. A taxpayer's lack of knowledge of accounting or tax preparation is a factor which tends to negate fraudulent intent. See *48 First Trust and Savings Bank v. United States,206 F.2d 97 (8th Cir. 1953); Marinzulich v. Commissioner,31 T.C. 487 (1958). A finding that a taxpayer acted fraudulently may also be supported by the fact that the taxpayer was evasive, uncooperative, or dilatory during the course of the Commissioner's examination. Such conduct tends to indicate an effort to conceal the true facts concerning the taxpayer's financial affairs. See Powell v. Granguist,252 F.2d 56, 60-61 (9th Cir. 1958); Estate of Beck v. Commissioner,56 T.C. 297, 365 (1971). In this case, the Commissioner concedes that Mr. Vaughn cooperated with the examining agent during the initial stages of the examination. However, he claims that Mr. Vaughn's attitude changed as the examination progressed and the examining agents began to ask probing questions. The evidence before us reveals that the Vaughns and their representatives cooperated fully with the investigation. The Vaughns allowed the examining agents access to their business records, including the envelopes given to Mr. Mulholland each month. On one occasion, Mrs. Hicks left the Dawson Street *49 office with some records and returned to her office. She had Mr. Vaughn's permission to do so. Mr. Vaughn or Mr. Mulholland was available to answer questions or to help locate documents. At times, Mr. Vaughn volunteered incriminating information. He supplied the examining agents with the passbooks from the petitioners' personal savings accounts and a list of certificates of deposit purchased by them. This information revealed the practice of diverting business receipts from the business checking account and enabled the agents to calculate the amount of unreported income. Mrs. Hicks testified that Mr. Vaughn claimed that invoices were only prepared for small jobs and that no copies of such invoices were retained. The Commissioner charges that Mr. Vaughn lied about the existence of other invoices, since it was subsequently determined that all work performed was invoiced. But the record shows that the petitioners supplied the examining agents with all their business records, including invoices sent to customers, at the start of the examination. Mrs. Hicks also testified that Mr. Vaughn became evasive and uncooperative when she began to ask questions about the Winnsboro property. *50 The Commissioner argues that this changed attitude shows an effort to hide information and to hinder his investigation. It is more likely that Mr. Vaughn became irritated at the long examination. His irritation was understandable because, despite his cooperation to that point, he was being threatened with criminal prosecution for tax evasion. The Commissioner further argues that the petitioners filed the amended return for 1977 in an attempt to mislead the examining agents. However, it is clear that the Vaughns did not decide on their own to file the amended return. Rather, it was done at the urging of Mr. Wills, the Vaughns' CPA, who used the occasion to include previously unreported income and to change the method of reporting income to the completed contract method. We conclude that the Vaughns did not file the amended return with the intent to mislead the Commissioner's agents in their investigation. The petitioners may have been negligent in not insuring that Mr. Mulholland recorded the unreported items of income properly or in not closely examining the income tax returns he prepared for them. In our judgment, however, such conduct does not rise to the level of actual, *51 intentional wrongdoing required for a finding of fraud for any of the years in issue. See Mitchell v. Commissioner,118 F.2d 308, 310 (5th Cir. 1941). The next issue for decision is whether the assessment of the deficiency in income tax for 1978 is barred by the statute of limitations. [3] The Commissioner concedes that assessment of such amount is barred unless the return filed was false or fraudulent with the intent to evade tax. See sec. 6501(c)(1). Since we have found that the Commissioner has failed to sustain his burden of proving fraud for 1978, the exception under section 6501(c)(1) to the statute of limitations does not apply. Therefore, the statute of limitations bars the assessment of the determined deficiency for 1978. Consequently, we need not decide the treatment of the items still in dispute for that year. The next issue for decision is whether the petitioners understated their gross receipts and overstated their *52 cost of goods sold on their joint Federal income tax returns for 1976 and 1977. The parties have conceded many of the items contained in the notice of deficiency. Consequently, only a few such items remain in dispute. As to these amounts, the petitioners have the burden of proof. Rule 142(a). The Commissioner determined that the petitioners failed to include in their gross receipts checks of $1,487.14 and $752.00 for 1977. The Vaughns claim that these amounts do not constitute gross income and offered testimony to support their claim. The check for $1,487.14 relates to a payment received from the Vaughns' insurance company for damage to a screen in a theatre that they were working on. The Commissioner argues that the expense of repairing the screen was likely deducted and that therefore the reimbursement should be included in income. Mr. Vaughn testified that he paid for the repair with cash and did not take a deduction for such expense. He acknowledged that his normal procedure was to give Mr. Mulholland a receipt so that he could claim such cash expenses. However, he claimed that this was an unusual situation and that he was unable to obtain a receipt in this instance. *53 We find Mr. Vaughn's vague testimony to be not persuasive and hold that he has failed to sustain his burden of proof on this point. Therefore, we conclude that the insurance reimbursement is includable in gross income. Cf. sec. 111(a). The Vaughns' savings account at the Wynnewood Bank shows a deposit of $752 in 1977.Mr. Vaughn testified that he had been asked by a friend to cash a check in this amount on behalf of Tex Movies. He did not explain why he had been asked to cash a check for another business. In our judgment, Mr. Vaughn's testimony on this item is not credible. Accordingly, we conclude that the petitioners have failed in their burden of proving that the Commissioner's treatment of this check is erroneous. Also in dispute is the tax treatment of a check for $1,760 received in 1976. The Commissioner initially determined that the item was omitted from the Vaughns' gross receipts. At trial, Mr. Vaughn testified that the check represented payment for the sale of a used motor generator. The parties now agree that the item is not includable in gross receipts, but should be treated as income from the sale of a capital asset. The Commissioner argues that the petitioners *54 have established neither the basis nor the holding period of the motor generator. Mr. Vaughn claimed to have acquired the equipment in the 1960s and to have sold it to a friend "for what [he] had in it." On the record, we judge Mr. Vaughn's testimony as to the date he acquired the equipment to be credible, but we decline to accept his claim as to its basis. It is quite possible that Mr. Vaughn salvaged the generator from an earlier job and, therefore, paid nothing for it. For such reasons, we conclude that the item should be treated as income from the sale of a capital asset held in excess of one year with a basis of zero. The next issue for decision is whether the petitioners may change their method of reporting gross receipts from the cash method to the completed contract method, without first obtaining the permission of the Commissioner. The Vaughns unilaterally made such a change on their amended joint Federal income tax return for 1977 and on their joint return for 1978. Section 446(e) provides that "a taxpayer who changes the method of accounting on the basis of which he regularly computes his income in keeping his books shall, before computing his taxable income under *55 the new method, secure the consent of the Secretary." The consent requirement is designed to provide the Commissioner with notice of any changes in accounting methods contemplated by taxpayers. Such requirement permits him to insure that the new method is a proper one and to make any correcting adjustments necessary to prevent distertions of income that may otherwise be caused by the change. See Woodward Iron Co. v. United States,396 F.2d 552, 554 (5th Cir. 1968); Commissioner v. O. Liquidating Corp.,292 F.2d 225, 230 (3d Cir. 1961). We find that the Vaughns are not entitled to change their method of reporting without the consent of the Commissioner. The fact that their income may be more accurately measured under the completed contract method gives them no right to change their accounting method without the Commissioner's approval. H.F. Campbell Co. v. Commissioner,53 T.C. 439, 448 (1969), affd. 443 F.2d 965 (9th Cir. 1971). Since the Commissioner's approval of a change has not been sought nor received, we cannot approve of a change from an accounting method which has served the Vaughns well for many years. *56 The next issue for decision is whether the petitioners are entitled to depreciation deductions for a 1977 Pontiac and for a concrete driveway during the years in issue. Section 167(a) allows a deduction for a reasonable allowance for the depreciation of property used in a taxpayer's trade or business. The petitioners bear the burden of proving that they are entitled to the depreciation deductions claimed by them. Rule 142(a). The Vaughns claimed a business use of 100 percent for the Pontiac on their tax returns. The Vaughns' testimony at trial constitutes the only evidence in the record concerning the car's business use. Mr. Vaughn testified that the vehicle was used for business purposes 60 to 70 percent of the time. Mrs. Vaughn testified that 50 percent of such use was for business purposes. However, they failed to produce any records showing the total mileage of such vehicle for each year in issue, the mileage they claimed to have driven the car on business, and the business purpose of such mileage. For such reasons, we conclude that they have failed to carry their burden of proving the business use of the car and are not entitled to the deductions claimed by them for *57 depreciation of such car. The petitioners also claimed depreciation deductions with respect to a "concrete driveway" on their land in Winnsboro. The driveway serves as a foundation for the storage shed and office building located on their property. These structures are used to store tools, business records, and building materials left over from completed jobs. Thus, in our judgment, the concrete driveway serves a business purpose and may be depreciated by the Vaughns. However, the shed and office building were constructed in 1978. Since there is no evidence that the driveway was used for business purposes in earlier years, we conclude that the concrete driveway was first placed in service in the business in 1978. A deduction for depreciation is first allowable in the period in which the asset is first placed in service in the taxpayer's business. Sec. 1.167(a)-10(b), Income Tax Regs.Therefore, the petitioners are not entitled to an allowance for depreciation in 1976 and 1977. The next issue for decision is whether the petitioners are entitled to deductions for expenses associated with the office they maintained in their home. *58 Section 280A(a) generally prevents taxpayers from deducting such expenses. However, section 280A(c)(1) provides for a number of exceptions to the general rule. One exception allows for a deduction if the home office is "exclusively used on a regular basis -- (A) [as] the principal place of business for any trade or business of the taxpayer * * *." When, as in this case, a taxpayer engages in a single trade or business in more than one location, we must examine the facts and circumstances to determine the taxpayer's principal place of business. Baie v. Commissioner,74 T.C. 105, 109 (1980). In our judgment, the office the Vaughns maintained in their home did not serve as their principal place of business. It is true that all the incoming mail of the business was received at the home office. It may also be that Mrs. Vaughn regularly worked in such office. However, other evidence leads us to conclude that the Dawson Street office was the "nerve center" of the business. By Mrs. Vaughn's own testimony, she only worked in the home office 4 hours per day. On the other hand, Mr. Vaughn, Mrs. Woods, and another employee all worked regularly at the Dawson Street office. *59 The petitioners' tax returns list their business address to be 3110 Dawson Street in Dallas. When the Commissioner's agents conducted their examination, they were given workspace at the Dawson Street office, and they performed all their work there. Finally, most of the paper work of the petitioners' business flows through the Dawson Street office. For such reasons, we conclude that the home office did not serve as the petitioners' principal place of business. Although recent decisions of the Second Circuit and the Seventh Circuit could be read to criticize this Court's focal point test, those cases involved taxpayers whose work at home was necessary to the success of their business or professional achievement. See Meiers v. Commissioner,782 F.2d 75 (7th Cir. 1986), revg. a Memorandum Opinion of this Court; see also Weissman v. Commissioner,751 F.2d 512 (2d Cir. 1984), revg. a Memorandum Opinion of this Court; Drucker v. Commissioner,715 F.2d 67 (2d Cir. 1983), revg. 79 T.C. 605 (1982). In these cases, the courts of appeal emphasized that, in determining whether the home office was the principal place of business, *60 factors to be considered include the time spent working in the home office and the importance of the home office to the taxpayer's trade or business. Meiers v. Commissioner,782 F.2d at 79. However, we need not attempt in the instant case to reconcile the decisions of the courts of appeal with our decisions in this area for we find that, by any standard, the petitioners' home office does not qualify as the principal place of business within the meaning of section 280A(c)(1)(A). The final issue for decision is whether the petitioners are entitled to deductions for business expenses not claimed on the original returns. The Vaughns now claim that they spent $8,089.28 to build the storage shed on the Winnsboro property in 1978 and that they are entitled to depreciation deductions with respect to such expenditures. We are not convinced that this entire sum was spent for a business purpose. There is evidence in the recore which indicates that some amount was spent to repair the Vaughns' cabin and boat dock on the Winnsboro property. However, we need not decide the proper allocation of the expenditures between business and personal use. We have already held that the *61 statute of limitations bars any change in the petitioners' taxable income for 1978. Thus, we find that the Vaughns may not reopen such year to claim these deductions. The petitioners now also contend that they are entitled to deductions for labor costs which were not claimed on the original returns. We have found as a fact that demolishing the interior of old theatres is a dirty and tedious job and that Mr. Vaughn was forced to employ day laborers to perform this work. Such workers demanded to be paid in cash. Mr. Vaughn found it difficult to keep an accounting of these cash payments. However, at trial, he managed to produce an estimate of such labor costs for the years in issue. He now estimates that he paid $15,890 in 1976 and $18,576 in 1977. The petitioners argue that, under the Cohan rule, they are entitled to a deduction for estimated labor costs. See Cohan v. Commissioner,39 F.2d 540, 544 (2d Cir. 1930). The Cohan rule has been applied to allow deductions for such estimated labor costs. See *62 Finley v. Commissioner,27 T.C. 413, 423 (1956). Since we have found that cash payments were in fact made, we agree that an allowance for some amount is proper. However, in our judgment, the estimates produced by Mr. Vaughn are grossly overstated. The document produced at trial to support the deductions is inadequate to substantiate the entire amount claimed by the petitioners. We have considered the limited evidence on this point, and bearing heavily against the petitioners who are responsible for the uncertainty and the lack of substantiation, we find deductions of $3,500 for 1976 and $6,000 for 1977 are reasonable. The Commissioner argues that we may not consider the treatment of these cash payments, since the issue was not raised in the pleadings. This Court has held on numerous occasions that it will not consider issues which have not been properly pleaded. See, e.g., Markwardt v. Commissioner,64 T.C. 989, 997-998 (1975); Estate of Mandels v. Commissioner,64 T.C. 61, 73 (1975); *63 Frentz v. Commissioner,44 T.C. 485, 491 (1965), affd. per order 375 F.2d 662 (6th Cir. 1967). Whether an issue has been properly raised depends on whether the opposing party has been given fair notice of the matter in controversy. Rule 31(a). We must therefore determine whether the Commissioner was surprised and put at a disadvantage when the issue of the deductibility of the payments was raised. See Estate of Horvath v. Commissioner,59 T.C. 551, 555 (1973). The issue was first raised in the petitioners' trial memorandum, in which they described one of the questions before the Court to be "Are Petitioners entitled to sections 162, 165 and 212 deductions for expenses paid, but not claimed as a result of accounting errors?" The memorandum was served on the Commissioner's counsel on February 15, 1985, in anticipation of trial on March 14, 1985. At trial, Mr. Vaughn and Mrs. Woods testified at length concerning the cash payments, without objection from the Commissioner's counsel. The document purporting to support the claimed deductions was admitted into evidence at trial, again without objection from opposing counsel. In our judgment, *64 the trial memorandum served one month before trial provided the Commissioner with fair notice of the issue and offered ample opportunity to litigate the question. For such reason, we conclude that the Commissioner was not at a disadvantage when the issue was raised at trial and that there was an implied amendment of the pleading in accordance with Rule 41(b). Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.↩
2. Any reference to a Rule is to the Tax Court Rules of Practice and Procedure.↩
3. Although the Commissioner mailed the notice of deficiency more than 3 years after the returns for all the years in issue were filed, the petitioners have raised the statute of limitations as a defense only with respect to 1978.↩