HILDA M. ROYCE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

KEN F. ROYCE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 30406, 30407. Promulgated July 21, 1952.

*Eli Freed, Esq.,* and *Scott Fleming Esq.,* for the petitioners.
*Charles W. Nyquist, Esq.,* for the respondent.

764

OPINION.

VAN FOSSAN, *Judge:* The sole issue in these proceedings is whether the income produced through the rental and sale of the construction equipment which was the subject of the declaration of gift is to be taxed to Ken and Hilda Royce as community income or to petitioner's parents. The determinative question is whether the petitioner and his wife made bona fide gifts of the property or whether the transaction was made under implied restrictions and was, therefore, ineffective for tax purposes.

Examination of the facts in the light of the criteria of a bona fide gift discloses that the petitioner was a competent donor. In the declaration of gift he stated his intention to give the construction equipment to his parents. The parents were capable of accepting the gift. There was sufficient evidence of delivery of property of this type.

The fact that the parents did not become active participants in the business of renting construction equipment is not determinative that there was no valid gift. It has been held that a parent may give members of his family property which is used in the parent's business and although he manages and supervises the property and its sale so that it is productive of income, this income may still be taxable to the donee. *Visintainer* v. *Commissioner*, 187 F. 2d 519. Although the rule set out by *Lucas* v. *Earl*, 281 U. S. 111, is that income is taxed to him who earns it, the fact that income-producing property is managed by the donor does not preclude taxation of the donee. If property is managed for the benefit of the donee he will be taxed upon the income. *Alexander* v. *Commissioner*, 190 F. 2d 753. If the parents possessed the right of dominion over the property and the income derived there-

from, the actual day to day control by the petitioner would not affect our determination. Such everyday supervision and management, with the consent of the owner, would not change the tax burden. *Henson* v. *Commissioner*, 174 F. 2d 846.

A valid gift requires, however, not only the aforementioned elements but also a bona fide intent by the donor to give away absolutely and irrevocably the ownership, dominion, and control of the property. The transaction must be in reality what it purports to be on its face. Lacking this essential element of bona fides and reality, there is no gift. *Sewell's Estate* v. *Commissioner*, 151 F. 2d 806. A further requisite is the irrevocable and permanent transfer of legal title and dominion and control of the property to the donee. *Adolph Weil*, 31 B. T. A. 899, affd. 82 F. 2d 561. On the evidence before us we are unable to find that the transaction was a valid and unrestricted gift. We cannot escape the conviction that from the beginning there was a plan to give the property and income derived therefrom back to the petitioners after his parents had paid the income taxes. In our opinion, a plan to give the property and income back to the petitioner as soon as possible with the least tax burden would deprive the gift to his parents of the necessary quality of an absolute and irrevocable transfer. True, the parties undertook to comply with meticulous care with the outward legal requirements of a gift. The gift instrument declared that the intention of the donor was to vest the property unconditionally, absolutely, and irrevocably in the donees. The formalities were fully served. However, the transfer and delivery of property are not conclusive if surrounding circumstances, including subsequent acts, indicate a contrary conclusion. *Theodore C. Jackson*, 32 B. T. A. 470. Even though the forms executed and the acts performed by the petitioner at the date of the alleged gifts would ordinarily manifest gifts, his later acts may indicate a failure to divest himself of title, dominion, and control. *Oscar G. Joseph*, 32 B. T. A. 1192. We are of the opinion that subsequent actions demonstrate and fully confirm the fact that the petitioner did not intend the gift of the equipment to his parents to be absolute and unrestricted but envisaged the return to himself and his family of the income produced by it with the eventual retransfer of the property itself. By this method his parents would receive the funds necessary to support themselves. They would also pay the taxes on the income produced at a lower rate than would petitioner, who had previously taken them as dependents. The parents would hold the property as it produced income and give back a substantial portion of this income each year and all of it on their death.

The gift transaction occurred in October 1942, and in the next 2½ months the property which had been valued for gift tax purposes at $29,030.56 produced income of $37,376.28. In the following year the

property was productive of $76,681.65 and gains from the sale of equipment aggregated $130,739.54. In 1943, $18,000 was given by Herman and Martha Royce to petitioner and his family by means of $3,000 gifts from each donor to Ken, Hilda, and Peter Royce. In 1943, Herman and Martha Royce each claimed a deduction of $5,000 contributions to the Ken Royce Foundation created on December 31, 1943. In 1944, the sale of construction equipment by the parents, a substantial quantity of which was sold to the Ken Royce Co. and the H. M. Royce Equipment Rental Co., produced capital gains of $73,525.05. An operating loss of $38,854.09 was incurred in 1944. In that same year, petitioner's parents each gave $39,000 to Ken and Hilda Royce, a total of $78,000. In 1945, capital gains on the sale of construction equipment by Herman and Martha Royce aggregated $73,758.21 and a loss of $30,282.78 was sustained through operations. In the same year petitioner's parents gave $18,000 to petitioner's family by gifts of $3,000 to each member. In 1946, capital gains of $42,688.02 were received on the sale of equipment while an operating loss of $13,070.25 was incurred. In 1946, another $18,000 was given by his parents to petitioner and his family. The sales of equipment to the Ken Royce Co. by the H. & M. Equipment Co. enabled the petitioner to receive the property back at an increased basis for depreciation while his parents were taxed at capital gains rates.

There is, of course, no limitation on the petitioner's right to make gifts to his parents nor a barrier to gifts by the parents to the petitioner and his family. When, however, an entire series of transactions discloses systematic and regular gifts of property and income from one person to others and back again to the original donor, we cannot close our eyes to the tax consequences. Other factors tend to show that there was no intent to make a bona fide gift but merely to acquire as many tax advantages as possible. The donor's employee was given the power to draw checks against the donee's bank account. A very low value was attributed to the gift property for gift tax purposes in the light of the fact that $8,000 more than the stated value was received from rental of the property in the 2½ months following the gift transaction. Each year, with one exception, there was received back from the parents the maximum exclusionary amount of gifts. Approximately a year after the transaction, in November 1943, the parents revoked their joint wills and made petitioner and his family their devisees in preference to each other and their other son. In 1947 petitioner's father died and petitioner received all of the estate except for the property to which his mother succeeded as the surviving joint tenant. This property and the mother's estate would, in turn, descend to petitioner or his family upon the death of his aged mother. It may be argued that the petitioner's father and mother possessed the right and ability to keep for themselves the income

produced by the equipment and to revoke their second wills. They were, however, elderly, newly arrived immigrants who had been dependent upon this son for their livelihood in a strange country. In *Richardson* v. *Smith*, 102 F. 2d 697, 699, the court summed up the attitude of the courts, as follows:

\* \* \* It is of course always possible that the parties to a formal transaction, like a deed or a written contract, may agree between themselves that it shall not have the effect upon their rights or obligations which it purports to have, or indeed any effect whatever; that it shall be a sham, a fetch, a disguise. So in this case the transfer may in fact have been intended only to deceive the taxing authorities. It is not necessary that such a mutual understanding shall be explicit or verbal; it may be gathered from the conduct of the parties in a series of transaction, or in any other way. *Johnson* v. *Commissioner*, 2 Cir., 86 F. 2d 710. All that need appear is that the donor did not intend to divest himself of control over the res, that the donee knew of the donor's intent and assented to it, and that the donor knew of the donee's assent. If all this is fairly inferrable [*sic*] from the relations, the gift, however formal, is a sham; but the donor's belief, though well founded, that he can prevail upon the donee to comply with his demands, is alone not enough; it does not put the donee's will under any constraint, and the property becomes unconditionally his. \* \* \*

In the present instance the facts disclose that the petitioner held more than a belief that his parents would return the income and property. They went so far as to insure the return of all this property by executing new wills.

We do not have here a gift with a condition subsequent that does not affect the donee's title. The petitioner's intention, as construed from the facts, was to give his parents no absolute right of dominion and control over the property, which is required of a valid gift. The rule we follow has been well stated in *Paul G. Green*, 7 T. C. 142, 150:

It is axiomatic that the reach of the income tax law is not to be circumscribed by refinements of legal title. The rule finds expression in the oft repeated admonitions that taxation is an intensely practical matter, concerned with economic realities; that tax consequences flow from the substance of a transaction rather than from its form; and that command over property or enjoyment of its economic benefits marks the real owner for income tax purposes. *Commissioner* v. *Court Holding Co.*, 324 U. S. 331; *Helvering* v. *Clifford*, 309 U. S. 331; *Gregory* v. *Helvering*, 293 U. S. 465; *Corliss* v. *Bowers*, 281 U. S. 376. \* \* \*

In view of all the circumstances, we conclude that, despite its formalities, the gift by petitioner to his parents was not absolute and irrevocable. The petitioner's intent to have the income and property returned to himself and his family rather than vest irrevocably under the control of his parents, deprives the gift of validity for our purposes.

Albeit, intent is a state of mind, it is to be proved, as are other facts. In the search for a taxpayer's intent we must weigh all pertinent facts and circumstances and their consequences. When this is done we come to the conclusion that respondent should be sustained.

*Decisions will be entered under Rule 50.*