T.C. Memo. 2016-1

UNITED STATES TAX COURT

DAVID R. GEMPERLE AND KATHRYN D. GEMPERLE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19599-12.                              Filed January 4, 2016.

        In 2007, Ps granted to a qualified donee a facade easement on
their Chicago residence, which constituted a certified historic
structure in a historic district, so that the easement was eligible for
classification as a "qualified conservation contribution" within the
meaning of I.R.C. sec. 170(f)(3)(B)(iii) and (h)(1).  Ps obtained an
appraisal from an appraiser included on a list of appraisers furnished
by the donee.  The appraiser valued the easement at $108,000, which
amount Ps deducted on their 2007 and (as a carryover) 2008 returns.
Ps did not include a copy of the appraisal with their 2007 return.

        R seeks to (1) deny Ps any deduction for their contribution of
the easement or, alternatively, to permit a deduction not to exceed
$35,000, and (2) impose 40% gross valuation misstatement penalties
under I.R.C. sec. 6662(h) or, alternatively, 20% penalties for
negligence under I.R.C. sec. 6662(a) and (b)(1).

- 2 -

**[*2]**  1. <u>Held</u>:  Ps' deductions are denied in full because of Ps' failure to include a qualified appraisal with their 2007 return.  <u>See</u> I.R.C. sec. 170(h)(4)(B)(iii)(I).

2. <u>Held</u>, <u>further</u>, because Ps failed to include a qualified appraisal with their 2007 return as required by I.R.C. sec. 170(h)(4)(B)(iii)(I), they are liable for 20% penalties under I.R.C. sec. 6662(a) and (b)(1) for disregard of rules and regulations.

3. <u>Held</u>, <u>further</u>, in the alternative, because Ps' unsupported $108,000 valuation is more than 200% of the maximum $35,000 valuation supported by the only expert appraisal in evidence, they are liable for 40% gross valuation misstatement penalties under I.R.C. sec. 6662(h).

David R. Gemperle and Kathryn D. Gemperle, pro sese.

<u>Lauren N. May</u>, <u>Kathryn E. Kelly</u>, and <u>Anita A. Gill</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, <u>Judge</u>:  Respondent has determined deficiencies in, and alternative penalties with respect to, petitioners' Federal income tax, as follows:[1]

_____

[1]Unless otherwise stated, section references are to the Internal Revenue Code in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.  We round all dollar amounts to the nearest dollar.

[*3]

| Year | Deficiency | Penalties Sec. 6662(a) | Sec. 6662(h) |
|------|-----------|------------------------|--------------|
| 2007 | $17,201 | $3,440 | $6,880 |
| 2008 | 9,724 | 1,945 | 3,890 |

The deficiencies are attributable to respondent's disallowance of a charitable contribution deduction for 2007 and a corresponding carryover deduction for 2008 ($69,186 for 2007 and $38,814 for 2008 for a total disallowance of $108,000) that petitioners claimed on account of their 2007 donation of a facade easement (plus cash, the deduction of which respondent does not challenge) to Landmarks Preservation Council of Illinois (Landmarks). With respect to the underpayments resulting from those disallowances, respondent determined accuracy-related penalties of 40% for a gross valuation misstatement under section 6662(h). In the alternative, he determined accuracy-related penalties of 20% under section 6662(a) for negligence or disregard of rules and regulations, as defined in subsection (c). He found no grounds for mitigation of the penalties under section 6664(c)(1) by reason of petitioners' acting with reasonable cause and in good faith.[2] The issues for determination are whether petitioners are entitled to the foregoing charitable

---

[2]The tax deficiencies are based upon respondent's revenue agent's disallowance of petitioners' total deduction for their contribution of the facade easement (i.e., they are based upon the agent's determination that the facade easement had no value), and the alternatively imposed sec. 6662 penalties are 40% and 20% of those deficiencies, respectively.

[*4] contribution deductions and, if not, whether they are liable for either of the section 6662 penalties.

FINDINGS OF FACT

The parties have stipulated certain facts and the authenticity of certain documents. The facts stipulated are so found, and the documents stipulated are accepted as authentic.

Petitioners resided in Chicago, Illinois, when they filed the petition.

Background

Since 1975, petitioners have owned and resided in a house built in 1898 in the Lakewood/Balmoral neighborhood of Chicago (Lakewood house). In 1999, the U.S. Department of the Interior, National Park Service (Park Service), established the neighborhood as a historic district and also listed the Lakewood house on the National Register of Historic Places. On or about December 17, 2007, the Park Service certified that the Lakewood house constituted "a 'certified historic structure' for a charitable contribution for conservation purposes in accordance with the Tax Treatment Extension Act of 1980."

After learning of the availability of conservation easement charitable contribution deductions at a 2002 or 2003 presentation by Landmarks, petitioners considered and, in 2007, decided to pursue, with Landmarks the creation of a

[*5] facade easement on the Lakewood house. Landmarks assisted petitioners in the creation and contribution (to it) of the facade easement, including the providing of forms (presumably a model for the easement contribution agreement itself) and a list of potential appraisers. Petitioners chose from that list Gwendolyn J. Fiorenzo to appraise the facade easement (Fiorenzo appraisal). Ms. Fiorenzo prepared two appraisals of the proposed facade easement, both dated December 21, 2007, the second of which corrected errors in the first and was considered, by petitioners, to be the actual, final appraisal.[3] The second appraisal was stated to be as of November 28, 2007. Both appraisals valued the proposed facade easement at $108,000, the total amount that petitioners deducted for their contribution of the easement to Landmarks.

Ms. Fiorenzo's first appraisal arrived at the $108,000 figure (a 12% reduction in her before-easement valuation of the Lakewood house) without identifying the after-easement comparable properties, and it concluded that the comparable properties' loss in value from the easement "typically ranged from 9% to 18%."[4] Her second appraisal did identify eight after-easement comparable

---

[3]Petitioners provided the second appraisal to respondent on August 6, 2013.

[4]Because, generally, no established market exists for determining the fair market value of an easement, the "before and after" appraisal method is normally

(continued...)

**[*6]** properties, found the loss-in-value range for them to be between 8% and 24%, but, consistent with her first appraisal, found a 12% loss in value for the Lakewood house.

Description of the Easement

On December 28, 2007, petitioners, in their capacities as trustees of trusts in their respective names, each, as "grantor" of "an undivided 1/2 interest", and Landmarks, as "grantee", entered into a "preservation easement" (agreement) with respect to the Lakewood house, by which petitioners conveyed the easement (facade easement) to Landmarks. The agreement recites that the obligations imposed by the facade easement were deemed to run as a binding servitude with the land and the agreement was to bind not only petitioners but also their successors as owners of the property (without distinction, petitioners). Under the terms of the agreement, petitioners agreed not to "demolish, remove or raze" the Lakewood house "or any portion of the Protected Elements" (in general, the entire

---

[4](...continued)
used to determine the fair market value of restrictive easements with respect to which charitable contribution deductions are claimed; i.e., the appraiser must compute a "before" value of the property in its current condition unrestricted by the easement and an "after" value of the property as encumbered by the easement, the excess of the former over the latter constituting the fair market value of the easement. See Hilborn v. Commissioner, 85 T.C. 677, 689-690 (1985); see also sec. 1.170A-14(h)(3)(i), Income Tax Regs.

[*7] exterior of the house, the roof and chimney, and a stone entrance arch), and they further agreed that, "[w]ithout the prior written permission of * * * [Landmarks]", they would not partially demolish or remove the Lakewood house or alter the "Protected Elements, including * * * any alteration, partial removal, construction, remodeling or physical or structural change, or change in surfacing", nor would they expand or reduce the Lakewood House "either horizontally or vertically", and they agreed generally to maintain the house and the protected elements. In addition, petitioners made a cash contribution to Landmarks of $10,800, which was 10% of the $108,000 charitable contribution deduction that they anticipated from their contribution to Landmarks of the facade easement.

Petitioners' Returns

Petitioners timely made joint returns of income on Forms 1040, U.S. Individual Income Tax Return, for their 2007 and 2008 taxable (calendar) years (2007 and 2008 return, respectively). Those returns show that they were prepared by a paid tax return preparer, Norton V. Binenfeld, certified public accountant (C.P.A.). Petitioners attached to the 2007 return an incomplete Form 8283, Noncash Charitable Contributions, claiming a deduction for the noncash charitable contribution of the facade easement to Landmark. No appraisal is included with the 2007 return. On or around October 22, 2010, petitioners submitted a corrected

[*8] Form 8283 to respondent. Both Forms 8283 show that they are a version of Form 8283 that was revised in December 2006. Both state: "An appraisal is generally required for property listed in Section B (see instructions)." Section B addresses donated property valued at over $5,000. Instructions for Form 8283, also revised December 2006, state that, for contributions of easements made on buildings in historic districts, the taxpayer must include with his return a "qualified appraisal".

Exclusion of the Fiorenzo Appraisal From Evidence

At the commencement of the trial, the Court addressed respondent's motion in limine to bar petitioners from asserting that the Fiorenzo appraisal (Exhibits 4-J and 13-J attached to the stipulation of facts) qualifies as evidence of the value of their facade easement. In his motion, respondent noted that petitioners had failed to list Ms. Fiorenzo as a witness, and he argued that he "would be prejudiced if the Fiorenzo appraisal was admitted as evidence * * * [of value] due to his inability to cross examine * * * [her] concerning the facts, analysis and conclusions purportedly set forth in * * * [the two exhibits]." Petitioners, in fact, did fail to produce Ms. Fiorenzo as a witness. As a result, we granted respondent's motion and excluded the Fiorenzo appraisal as evidence of the value of the facade easement.

**[*9]** <u>Petitioners' Witnesses at Trial</u>

Petitioners did call three witnesses, in addition to themselves. None of them qualified as (nor did petitioners claim that they were) experts in appraising real estate. Therefore, their proffered written submissions failed to constitute expert reports, and, for that reason, we granted respondent's motions in limine to exclude those submissions from evidence. We did permit petitioners, however, to elicit testimony from all three as fact witnesses. None of the three purported to or did, in fact, establish a value for petitioners' facade easement.

The first witness, Thom Greene, an architect, testified that the zoning laws for the Lakewood/Balmoral district would not prohibit petitioners from expanding the Lakewood house by, for example, attaching an addition to the house. The second, Pamela Ball, a realtor, testified that houses, like the Lakewood house, on 50-foot lots are highly valued because they can be expanded. The third, Maureen Murnane, also a realtor, testified that respondent's expert appraiser improperly referred to one of the houses located, like the Lakewood house, on Lakewood Avenue as a comparable property in valuing the Lakewood house before petitioners' contribution of the facade easement.

**[*10]** Respondent's Witnesses at Trial

Respondent introduced into evidence two expert reports, and the authors of those reports testified in support thereof. The first expert, Howard Kanter, criticized the Fiorenzo appraisal, primarily on the ground that it fails to satisfy various requirements of the Uniform Standards of Professional Appraisal. The second expert, Brian Flynn, testified that the facade easement had a value in the range of zero to $35,000.

OPINION

I.      Petitioners' Entitlement to a Deduction for the Facade Easement

A.      Applicable Law

Section 170(a)(1) generally allows a deduction for any charitable contribution, subject to certain limitations, that the taxpayer makes during the taxable year. Pursuant to section 170(f)(11)(A) and (C), no deduction is allowed under subsection (a) for a contribution of property for which a deduction of more than $5,000 is claimed unless the taxpayer (individual, partnership, or corporation) obtains a "qualified appraisal" of such property. Section 170(f)(11)(E)(i) defines a qualified appraisal as an appraisal that complies with pertinent regulations and other Internal Revenue Service (IRS) guidance and that is conducted by a "qualified appraiser" in accordance with generally accepted appraisal standards. A

[*11] "qualified appraiser" is generally defined as an individual who "has earned

an appraisal designation from a recognized professional appraiser organization or

has otherwise met minimum education and experience requirements set forth in

* * * [IRS] regulations", "regularly performs appraisals for * * * compensation",

and meets "such other requirements as may be prescribed by * * * [IRS]

regulations or other guidance."  Sec. 170(f)(11)(E)(ii).  We set forth in the margin

the elements of a qualified appraisal.[5]

---

[5]Sec. 1.170A-13(c)(3)(ii), Income Tax Regs., enumerates 11 items that a qualified appraisal must include:

(A) A description of the property in sufficient detail for a person who is not generally familiar with the type of property to ascertain that the property that was appraised is the property that was (or will be) contributed;

(B) In the case of tangible property, the physical condition of the property;

(C) The date (or expected date) of contribution to the donee;

(D) The terms of any agreement or understanding entered into (or expected to be entered into) by or on behalf of the donor or donee that relates to the use, sale, or other disposition of the property contributed * * * ;

(E) The name, address, and * * * the identifying number of the qualified appraiser; * * *

(F) The qualifications of the qualified appraiser who signs the

(continued...)

[*12] Section 170(f)(3) generally denies a deduction for charitable contributions of partial interests in property. One exception to that general rule is for a "qualified conservation contribution." Sec. 170(f)(3)(B)(iii). Pursuant to section 170(h)(1) a qualified conservation contribution means a contribution of a "qualified real property interest" to a "qualified organization"[6] made "exclusively for conservation purposes." A qualified real property interest includes "a

---

[5](...continued)
appraisal, including the appraiser's background, experience, education, and membership, if any, in professional appraisal associations;

(G) A statement that the appraisal was prepared for income tax purposes;

(H) The date (or dates) on which the property was appraised;

(I) The appraised fair market value (within the meaning of § 1.170A-1(c)(2)) of the property on the date (or expected date) of contribution;

(J) The method of valuation used to determine the fair market value, such as the income approach, the market-data approach, and the replacement-cost-less-depreciation approach; and

(K) The specific basis for the valuation, such as specific comparable sales transactions or statistical sampling, including a justification for using sampling and an explanation of the sampling procedure employed.

[6]Respondent agrees that Landmarks is a qualified organization.

[*13] restriction (granted in perpetuity) on the use which may be made of the real property."  Sec. 170(h)(2)(C).  Under section 170(h)(5)(A), "A contribution shall not be treated as exclusively for conservation purposes unless the conservation purpose is protected in perpetuity."  In the case of a certified historic structure, i.e., a building in a registered historic district (which would include the Lakewood house), "any contribution of a qualified real property interest which is a restriction with respect to the exterior of a building", is not considered to be made exclusively for conservation purposes unless the contributed interest (i.e., the restriction) "preserves the entire exterior of the building" and prohibits any change thereof "which is inconsistent with the historical character of such exterior".  See sec. 170(h)(4)(B)(i)(I) and (II).  In addition, the donor and the donee must certify, under penalty of perjury, that the donee is a qualified organization with "the resources to manage and enforce the restriction and a commitment to do so", and the taxpayer donor must include with the return for the contribution year a qualified appraisal, photographs of the entire building exterior, and a description of the restrictions on development of the building.  See sec. 170(h)(4)(B)(ii) and (iii).

**[*14]** B.     Analysis

    1.     Introduction

Respondent sets forth several grounds for his position that petitioners are not entitled to any deduction for their contribution to Landmarks of the facade easement, including: (1) the absence of a qualified appraisal as required by section 170(f)(11)(A) and (C); (2) the fact that the facade easement or restriction was neither granted in perpetuity as required by section 170(h)(2)(C) nor protected in perpetuity as required by section 170(h)(5)(A); (3) petitioners' failure to include a copy of a qualified appraisal or photographs of the Lakewood house with the 2007 return as required by section 170(h)(4)(B)(iii); (4) petitioners' failure to include a completed appraisal summary with the 2007 return as required by section 1.170A-13(c)(2)(i)(B) and (4), Income Tax Regs.; and (5) petitioners' failure to prove that the contribution decreased the value of the Lakewood house by $108,000. Because we find that petitioners failed to include a copy of a qualified appraisal with the 2007 return as required by section 170(h)(4)(B)(iii)(I), we will sustain respondent's adjustments to the 2007 and 2008 returns denying them any charitable contribution deduction on account of their contribution of the facade easement to Landmarks, and we need not address respondent's alternative grounds for denying the deductions.

[*15]    2.    <u>Petitioners' Failure To Satisfy the Appraisal-Inclusion Requirement</u>

Section 170(h)(4)(B)(iii)(I) provides that a taxpayer donor who contributes a use restriction (such as the facade easement) encumbering a certified historic structure in a registered historic district (such as the Lakewood house) must include with his tax return for the year of the contribution a qualified appraisal. That provision was added to the Internal Revenue Code by the Pension Protection Act of 2006, Pub. L. No. 109-280, sec. 1213(a)(1) [sic (a)], 120 Stat. at 1075. While it appears on the face of section 170(h)(4)(B) that the failure to include the necessary appraisal with the return for the contribution year is fatal to the deduction (negating the exclusivity of the contribution for conservation purposes), that result is confirmed in the Staff of the Joint Committee on Taxation's Technical Explanation of H.R. 4, the "Pension Protection Act of 2006", as passed by the House on July 28, 2006, and as considered by the Senate on August 3, 2006 (JCX-38-06) 291-292 (J. Comm. Print 2006).  The Joint Committee Staff explains the appraisal-inclusion requirement as follows:

> For any contribution relating to a registered historic district made after the date of enactment of the provision [Aug. 17, 2006], taxpayers must include with the return for the taxable year of the contribution a qualified appraisal of the qualified real property interest (irrespective of the claimed value of such interest) and attach the appraisal with the taxpayer's return * * * .  <u>Failure to obtain and</u>

**[\*16]**     <u>attach an appraisal * * * results in disallowance of the</u>
<u>deduction</u>.  * * *

<u>Id</u>. at 295 (emphasis added) (fn. ref. omitted); <u>see also</u> Staff of J. Comm. on

Taxation, Description of the Chairman's Modification to the Provisions of the

"Tax Relief Act of 2005" (JCX-77-05) 65 (J. Comm. Print 2005) (prior unenacted

legislation; similar).

The parties have stipulated a copy of the 2007 return, and nothing

resembling a qualified appraisal is included with it.  Indeed, petitioners concede

on brief:  "We admit that the full [Fiorenzo] appraisal was not included with the

[2007] return".  For lack of a qualified appraisal included with the 2007 return, we

will sustain respondent's adjustments disallowing for 2007 and 2008 petitioners'

charitable contribution deductions claimed on account of their contribution of the

facade easement to Landmark.

II.     <u>Application of the Accuracy-Related Penalty</u>

A.     <u>Introduction</u>

Respondent seeks to impose a 40% accuracy-related penalty for each of the

years in issue under section 6662(h) or, in the alternative, a 20% penalty under

section 6662(a) and either subsection (b)(1) or (2).  Under section 7491(c), the

Commissioner bears the burden of production with regard to penalties and must

**[\*17]** come forward with sufficient evidence indicating that it is proper to impose penalties. Higbee v. Commissioner, 116 T.C. 438, 446 (2001). However, once the Commissioner has met the burden of production, the burden of proof remains with the taxpayer, including the burden of proving that the penalties are inappropriate because of reasonable cause. Id. at 446-447. Only one accuracy-related penalty may be applied with respect to any given portion of an underpayment, even if that portion is subject to the penalty on more than one of the grounds set out in section 6662(b). Sec. 1.6662-2(c), Income Tax Regs.

B.      Application of Section 6662(a) Penalty

Section 6662(a) and (b)(1) imposes a penalty equal to 20% of the portion of the underpayment of tax attributable to negligence or disregard of rules or regulations. Section 6662(c) provides in pertinent part that, for purposes of section 6662, "disregard" "includes any careless, reckless, or intentional disregard." Section 1.6662-3(b)(2), Income Tax Regs., provides in pertinent part that the term "rules or regulations" includes, among other things, "the provisions of the Internal Revenue Code".

We have sustained respondent's adjustments disallowing petitioners any charitable contribution deduction for the contribution of the facade easement to Landmarks on the ground that they failed to comply with the requirement of

[*18] section 170(h)(4)(B)(iii)(I) that they include a qualified appraisal with the return for 2007, the taxable year of the contribution.  That requirement is stated not only in the Internal Revenue Code but also in the instructions for the Form 8283 that accompanied the 2007 return.  The form itself warned petitioners that an appraisal is generally required for donated property over $5,000 and directed them to the Form 8283 instructions.  We cannot help but conclude that petitioners did not exercise reasonable diligence to determine the correctness of their return positions in claiming a charitable contribution deduction in the face of the warning on the Form 8283 that an appraisal is generally required for donations of property over $5,000.  See sec. 1.6662-3(b)(2), Income Tax Regs.  Petitioners were at least careless, if not reckless, in ignoring the warning that an appraisal was required.  They disregarded the appraisal-inclusion requirement of section 170(h)(4)(B)(iii)(I) and are thus liable for accuracy-related penalties on account of such disregard unless they can show adequate disclosure of their position or reasonable cause for the resulting underpayments and that they acted in good faith.  See sec. 6664(c)(1); sec. 1.6662-3(a), Income Tax Regs.  Petitioners have made no such showing and, thus, do not escape the section 6662(b)(1) penalties.

Because the resulting 2007 and 2008 underpayments of tax are fully attributable to petitioners' disregard of section 170(h)(4)(B)(iii)(I), they are liable

**[*19]** for 20% accuracy-related penalties on the whole of those underpayments pursuant to section 6662(a) and (b)(1). We need not consider their liability under section 6662(a) and (b)(2), concerning any substantial understatement of income tax, for similar penalties. We will, however, consider their potential alternative liability for 40% penalties under section 6662(a) and (b)(3) on account of a valuation misstatement.

      C.     Application of Section 6662(h) Penalty

          1.     Analysis

Section 6662(a) and (b)(3) imposes a penalty equal to 20% of the portion of the underpayment of tax attributable to a substantial valuation misstatement. A valuation misstatement of 200% or more of the correct amount is a gross valuation misstatement, and the 20% penalty increases to 40%. Sec. 6662(h)(1) and (2)(A)(i). The taxpayer may not rely on a reasonable cause, good-faith defense against imposition of the section 6662(h) penalty with respect to gross valuation misstatements of charitable contribution properties. See sec. 6664(c)(2); Chandler v. Commissioner, 142 T.C. 279, 293 (2014). No penalty, however, is imposed unless the portion of the underpayment attributable to the valuation misstatement exceeds $5,000. Sec. 6662(e)(2).

**[\*20]** As discussed <u>supra</u>, because petitioners failed to make their alleged qualified appraiser, Ms. Fiorenzo, available for cross-examination, we determined that her written appraisals constituted inadmissable hearsay evidence, and we refused to admit them as evidence of the value of petitioners' facade easement.[7] As a result, petitioners have failed to furnish admissible evidence that their facade easement had any determinable value.[8] Respondent submitted expert testimony by Mr. Flynn that the easement's "influence on value [of the Lakewood house] would

---

[7]We see no reason to reverse that evidentiary ruling. Pursuant to Rule 143(g)(1), an expert witness is required to prepare a written report for submission to the Court, which, pursuant to Rule 143(g)(2), is "received in evidence as the direct testimony of the expert witness". Because the written report constitutes the expert witness' direct testimony, it is necessary that the expert witness be available for cross-examination regarding the truth or accuracy of the assertions in the written report. Otherwise, the written report constitutes excludable hearsay evidence. "The essential requirement of the hearsay rule \* \* \* is that statements offered testimonially must be subjected to the test of cross-examination." 5 Wigmore on Evidence, sec. 1365, at 28 (Chadbourn rev. 1974). "The premise that the opportunity of cross-examination is an essential safeguard has become the principal justification for the general exclusion of hearsay statements." 1 McCormick on Evidence, sec. 19, at 152 (7th ed. 2013). Moreover, even though the loss of a nonparty witness' direct testimony may impose a severe hardship on the party relying on that testimony, which, under certain circumstances, might justify a court's exercise of its discretion to admit such testimony, <u>see</u> <u>id.</u>, that circumstance does not arise in this case, where Ms. Fiorenzo's failure to testify arose out of petitioners' voluntary decision not to make her available, <u>see</u> <u>Estate of Tanenblatt v. Commissioner</u>, T.C. Memo. 2013-263, at \*9-\*12.

[8]As discussed <u>supra</u>, none of petitioners' three fact witnesses established a value for the easement.

[*21] be in the range of no measurable impact to a de minimis impact or as expressed in dollar figures: $0 to $35,000." Mr. Flynn "concluded at the high end of the range" on the basis of his interpretation of section 1.170A-14(h)(3)(i), Income Tax Regs., which addresses the valuation of conservation restrictions.

On brief, petitioners criticize Mr. Flynn's "before" valuation of $780,000 for the Lakewood house, which is $85,000 less than their proffered "before" valuation of $865,000. Because they accept Mr. Flynn's "after" valuation of $745,000, they determine a $120,000 value for their facade easement, which is $12,000 more than their deduction based upon the Fiorenzo appraisal. Petitioners' criticism of Mr. Flynn's "before" valuation is based largely upon his allegedly improper adjustments to the sale prices of houses that he considered comparable to the Lakewood house. That criticism is problematic in the light of petitioners' acceptance of Mr. Flynn's "after" valuation, which makes adjustments to the sale prices of comparable houses on the same bases that he used in adjusting the "before" sale prices. Petitioners have not persuaded us that Mr. Flynn's valuation of their facade easement is unreasonably low.

In the absence of expert testimony that the value of the easement was greater than $35,000, we accept that amount as its value for purposes of

[*22] determining whether petitioners are liable for section 6662(h) penalties for gross valuation misstatement.

Accepting, as we do, that $35,000 constitutes the maximum value of petitioners' facade easement, petitioners' $108,000 valuation thereof is more than 200% "of the amount determined to be the correct amount of such valuation", thereby triggering the application of 40% gross valuation misstatement penalties under section 6662(e)(1)(A) and (h) and satisfying respondent's burden of production under section 7491(c).  We shall, therefore, impose the penalty.

## 2.    Conclusion

Petitioners are liable for 40% substantial valuation misstatement penalties on the portions of their 2007 and 2008 underpayments attributable to reporting the value of the facade easement to be in excess of $35,000.

Decision will be entered under

Rule 155.