T.C. Memo. 2020-157

UNITED STATES TAX COURT

GEORGE FAKIRIS, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket No. 18292-12.                    Filed November 19, 2020.

<u>Neil David Katz</u>, <u>Richard Stephen Kestenbaum</u>, and <u>Bernard Stephen Mark</u>,

for petitioner.

<u>Marc L. Caine</u> and <u>Peggy J. Gartenbaum</u>, for respondent.

SUPPLEMENTAL MEMORANDUM OPINION

GALE, <u>Judge</u>:  Respondent has timely moved for reconsideration of our

prior opinion <u>Fakiris v. Commissioner</u> (<u>Fakiris I</u>), T.C. Memo. 2017-126.[1]  See

_____

[*]This opinion supplements our previously filed opinion <u>Fakiris v. Commissioner</u>, T.C. Memo. 2017-126.

[1]We granted respondent's simultaneous motion to vacate our decision under
(continued...)

[*2] Rule 161.[2]  In Fakiris I, we held, inter alia, that petitioner was not entitled to charitable contribution deductions claimed under section 170 in connection with the transfer of the St. George Theatre (St. George or theater) on the grounds that Grou Development LLC (Grou)--of which petitioner was the managing member-- did not relinquish dominion and control over the theater as required for a completed gift.  We also held that the disallowance of the claimed deductions gave rise to gross valuation misstatements for which petitioner was liable for 40% accuracy-related penalties under section 6662(h).  Since the transfer of the theater was not a completed gift, we determined that the correct value of the property actually contributed was zero for purposes of determining the applicability of the section 6662(h) accuracy-related penalty because no property had been transferred, citing Bosque Canyon Ranch, L.P. v. Commissioner, T.C. Memo. 2015-130, vacated and remanded sub nom. BC Ranch II, L.P. v. Commissioner, 867 F.3d 547 (5th Cir. 2017), and United States v. Woods, 571 U.S. 31 (2013).

---

[1](...continued)
Rule 162 to facilitate consideration of his motion for reconsideration.

[2]Unless otherwise noted, all section references are to the Internal Revenue Code of 1986, as amended and in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[*3]**    Respondent does not dispute our holding that the transfer of the St. George failed to be a completed gift.  Rather, respondent argues that the Court's application of the section 6662(h) accuracy-related penalty in Fakiris I was not analyzed properly and that our analysis should be reconsidered.  In particular, respondent argues that Fakiris I misapplies Woods and conflicts with the reasoning of the Court in RERI Holdings I, LLC v. Commissioner, 149 T.C. 1 (2017), aff'd sub nom. Blau v. Commissioner, 924 F.3d 1261 (D.C. Cir. 2019), and Gemperle v. Commissioner, T.C. Memo. 2016-1.  In those cases, even though the Court disallowed charitable contribution deductions in their entirety for donations of a remainder interest and a facade easement, respectively, for failure to satisfy statutory substantiation requirements, we nevertheless found it necessary to ascertain the fair market value of the remainder interest and the facade easement that had been contributed in order to decide whether the values claimed on the returns for them resulted in gross or substantial valuation misstatements for purposes of section 6662(h).  It is respondent's contention that a determination of the "actual value" of the theater is similarly required in order to determine the extent to which petitioner's returns contained gross valuation misstatements under that section.

**[*4]** The decision whether to grant a motion for reconsideration lies within the discretion of the Court. Estate of Quick v. Commissioner, 110 T.C. 440, 441 (1998), supplementing 110 T.C. 172 (1998). Motions for reconsideration are generally "intended to correct substantial errors of fact or law and allow the introduction of newly discovered evidence that the moving party could not have introduced by the exercise of due diligence in the prior proceeding." Knudsen v. Commissioner, 131 T.C. 185, 185 (2008), supplementing T.C. Memo. 2007-340. "Reconsideration is not the appropriate forum for rehashing previously rejected legal arguments or tendering new legal theories to reach the end result desired by the moving party." Estate of Quick v. Commissioner, 110 T.C. at 441-442.

For the reasons discussed hereinafter, we believe our application of the section 6662(h) accuracy-related penalty was correct, and we will therefore deny respondent's motion. However, after the issuance of Fakiris I, the U.S. Court of Appeals for the Fifth Circuit, in BC Ranch II, L.P. v. Commissioner, 867 F.3d 547 (5th Cir. 2017), vacated and remanded Bosque Canyon Ranch, L.P., which, as noted supra, was cited along with Woods as support for our section 6662(h) accuracy-related penalty determination in Fakiris I. Thus, we herein address the issues raised by respondent's motion and clarify the reasoning supporting our application of the section 6662(h) accuracy-related penalty in Fakiris I.

[*5]                                 Discussion

We adopt the findings of fact set forth in Fakiris I, repeating such facts only

as necessary for clarity and convenience.

I.    Valuation misstatement penalties

Section 6662(a) and (b)(3) imposes an accuracy-related penalty equal to

20% of the portion of an underpayment of tax "attributable to * * * [a]ny

substantial valuation misstatement under chapter 1." For purposes of section

6662, "a substantial valuation misstatement under chapter 1" exists if "the value of

any property (or the adjusted basis of any property) claimed on any return of tax

imposed by chapter 1 is 150 percent or more of the amount determined to be the

correct amount of such valuation or adjusted basis (as the case may be)".[3]  Sec.

6662(e)(1)(A).  However, and for purposes of the foregoing provisions, if the

value or adjusted basis of the property claimed on the return is 200% or more of

the amount determined to be the correct amount of such value or adjusted basis, a

_____

[3]As noted in Fakiris I, the Pension Protection Act of 2006, Pub. L. No. 109-280, 120 Stat. 780, effected certain amendments to the valuation misstatement penalty regime, including lowering the threshold percentages and eliminating the reasonable cause defense for gross valuation misstatements made in connection with charitable contributions of property. As applicable here, the amendments are effective for returns filed after August 17, 2006, including returns claiming a carryover of a charitable contribution deduction originating in a return filed before August 17, 2006, as occurred here.  See Chandler v. Commissioner, 142 T.C. 279, 294 (2014).

**[*6]** "gross valuation misstatement" exists and the penalty imposed increases to 40%. Sec. 6662(h). A gross valuation misstatement is considered to exist when the correct value or adjusted basis of property is zero and the value or adjusted basis claimed on the return for such property is greater than zero. See sec. 1.6662-5(g), Income Tax Regs.

II.     United States v. Woods

In Woods the U.S. Supreme Court granted certiorari to resolve a circuit split among the U.S. Courts of Appeals over whether the section 6662(b)(3) accuracy-related penalty for valuation misstatements is applicable when the relevant transaction is disregarded for lack of economic substance. The majority view held that the penalty applied to such transactions, with the Court of Appeals for the Second Circuit (to which an appeal in this case lies absent a stipulation to the contrary) reasoning that "[w]here a transaction is not respected for lack of economic substance, the resulting underpayment is attributable to the implicit overvaluation." Gilman v. Commissioner, 933 F.2d 143, 152 (2d Cir. 1991) (applying the since-repealed section 6659 penalty for valuation overstatements),[4]

---

[4]In the Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101-239, sec. 7721, 103 Stat. at 2395-2400, Congress repealed former sec. 6659 and consolidated the various accuracy-related penalties into sec. 6662, carrying over the same essential language as sec. 6659. In the Omnibus Budget Reconciliation

(continued...)

**[\*7]** aff'g T.C. Memo. 1989-684; see also Superior Trading, LLC v. Commissioner, 728 F.3d 676, 681-682 (7th Cir. 2013), aff'g 137 T.C. 70 (2011) and T.C. Memo. 2012-110; Gustashaw v. Commissioner, 696 F.3d 1124, 1136-1138 (11th Cir. 2012), aff'g T.C. Memo. 2011-195; Alpha I, L.P. ex rel. Sands v. United States, 682 F.3d 1009, 1026-1031 (Fed. Cir. 2012); Fid. Int'l Currency Advisor A Fund, LLC v. United States, 661 F.3d 667 (1st Cir. 2011); Merino v. Commissioner, 196 F.3d 147, 155-159 (3d Cir. 1999), aff'g T.C. Memo. 1997-385; Zfass v. Commissioner, 118 F.3d 184, 190-191 (4th Cir. 1997), aff'g T.C. Memo. 1996-167; Illes v. Commissioner, 982 F.2d 163, 166-167 (6th Cir. 1992), aff'g T.C. Memo. 1991-449; Massengill v. Commissioner, 876 F.2d 616, 619-620 (8th Cir. 1989), aff'g T.C. Memo. 1988-427.  In joining the majority view, the Court of Appeals for the Seventh Circuit reasoned that "a taxpayer who overstates basis <u>and</u> participates in sham transactions * * * should be punished at least as severely as one who does only the former."  Superior Trading, LLC v. Commissioner, 728 F.3d at 682; see also Gilman v. Commissioner, 933 F.2d at 150.

---

[4](...continued)
Act of 1990, Pub. L. No. 101-508, sec. 11312, 104 Stat. at 1388-454 to 1388-455, Congress amended sec. 6662, changing, inter alia, the phrase "valuation overstatement" to refer to "valuation misstatement".

**[\*8]** The minority view shared by the Courts of Appeals for the Fifth and Ninth Circuits held that when a deduction or credit is disallowed in full, the underpayment is not "attributable to" a misstatement of value within the meaning of the statute; rather, the courts reasoned, the underpayment is attributable to claiming an improper deduction or credit. See Keller v. Commissioner, 556 F.3d 1056 (9th Cir. 2009), aff'g in part, rev'g in part T.C. Memo. 2006-131; Heasley v. Commissioner, 902 F.2d 380, 382-383 (5th Cir. 1990), rev'g T.C. Memo. 1988-408; Gainer v. Commissioner, 893 F.2d 225 (9th Cir. 1990), aff'g T.C. Memo. 1988-416; Todd v. Commissioner, 862 F.2d 540 (5th Cir. 1988), aff'g 89 T.C. 912 (1987).

The transaction at issue in Woods concerned a tax shelter wherein the taxpayer contributed offsetting currency options to a partnership to create an artificially inflated basis in his interest, which, following the subsequent liquidation thereof, ultimately resulted in his claiming significant noneconomic tax losses.[5] Woods, 571 U.S. at 33-34; see IRS Notice 2000-44, 2000-2 C.B. 255.

---

[5]The specific tax shelter at issue in Woods is known as COBRA (Currency Options Bring Reward Alternatives), one of several shelters generically referred to as "Son of BOSS", an acronym that refers to an earlier corporate tax shelter known as BOSS (Bond and Options Sales Strategy). See Karen C. Burke & Grayson M.P. McCouch, "Woods: A Path Through the Penalty Maze", 142 Tax Notes 829, 829-830 & n.3 (2014); Karen C. Burke & Grayson M.P. McCouch, "COBRA

(continued...)

[*9] The U.S. District Court held that the partnerships at issue were shams but that under Fifth Circuit precedent the valuation misstatement penalty did not apply because the relevant transaction was disregarded for lack of economic substance. Woods, 571 U.S. at 37. The Court of Appeals for the Fifth Circuit affirmed. Id.

The Supreme Court reversed, adopting the majority view that the valuation misstatement penalty applies when the relevant transaction is disregarded for lack of economic substance. Id. at 44. The holding relied on a plain language reading of the statute:

> The penalty's plain language makes it applicable here. As we have explained, the COBRA transactions were designed to generate losses by enabling the partners to claim a high outside basis in the partnerships. But once the partnerships were deemed not to exist for tax purposes, no partner could legitimately claim an outside basis greater than zero. Accordingly, if a partner used an outside basis figure greater than zero to claim losses on his tax return, and if deducting those losses caused the partner to underpay his taxes, then the resulting underpayment would be "attributable to" the partner's having claimed an "adjusted basis" in the partnerships that exceeded "the correct amount of such . . . adjusted basis." § 6662(e)(1)(A).

Id.

The Supreme Court noted that under the regulations, "when an asset's true value or adjusted basis is zero, '[t]he value or adjusted basis claimed . . . is

---

[5](...continued)
Strikes Back: Anatomy of a Tax Shelter", 62 Tax Law. 59, 64-66 (2008).

[*10] considered to be 400 percent or more of the correct amount,' so that the resulting valuation misstatement is automatically deemed gross and subject to the 40-percent penalty." Id. (quoting section 1.6662-5(g), Income Tax Regs.).

The taxpayer in Woods advanced two arguments. First, the taxpayer argued that "the statutory terms 'value' and 'valuation' connote 'a factual--rather than legal--concept,' and that the penalty therefore applies only to factual misrepresentations about an asset's worth or cost, not to misrepresentations that rest on legal errors (like the use of a sham partnership)." Id. The Supreme Court rejected this argument, holding that the concept of "value" for purposes of applying the valuation misstatement penalty encompasses not only factual misstatements but also "threshold legal determinations." Id. at 45.

Second, the taxpayer--advancing the view of the Courts of Appeals for the Fifth and Ninth Circuits--argued that any underpayment of tax was not "attributable to" a misstatement of basis, "but rather to the determination that the partnerships were shams--which he describe[d] as an 'independent legal ground.'" Id. at 46-47. The Supreme Court rejected this argument as well, holding that "[t]he economic substance determination and the basis misstatement are not 'independent' of one another." Woods, 571 U.S. at 47. Rather, the Court explained, the misstatement of basis and the transaction's lack of economic

**[*11]** substance are "inextricably intertwined" such that to claim otherwise was to make "a false distinction." Id. at 47 (internal quotation marks and citation omitted). The Supreme Court succinctly summarized this point: "In short, the partners underpaid their taxes because they overstated their outside basis, and they overstated their outside basis because the partnerships were shams." Id.

III.     Respondent's motion

As noted supra, respondent argues that the Court's analysis of the applicability of the section 6662(h) accuracy-related penalty in Fakiris I is wrong. Respondent argues that Fakiris I misapplies Woods and conflicts with this Court's reasoning in RERI Holdings, LLC and Gemperle. Respondent argues that the Court erred in determining the applicability of the section 6662(h) penalty by treating the value of the contributed property as zero (because no property was contributed) and that in order to determine the proper penalty amount the "actual value" of the theater must be determined. We disagree.

IV.     Application of the section 6662(h) penalty in the case of sham gifts

In Fakiris I we held that petitioner was not entitled to charitable contribution deductions in connection with Grou's transfer of the St. George to WEMGO Charitable Trust, Inc. (WEMGO), on the grounds that the transfer did not constitute a completed gift. Under the contract of sale, WEMGO agreed not to sell

[*12] the St. George for five years after obtaining legal title, during which Grou retained the right to direct the transfer of title to Richmond Dance Ensemble, Inc. (Richmond Dance), in the event it obtained IRS recognition of section 501(c)(3) tax-exempt status. We held that WEMGO's agreement to a restriction on transferability, coupled with Grou's retention of the right to direct the transfer of ownership of the theater for five years, afforded Grou a substantial--indeed paramount--element of dominion and control over the subject of the claimed gift, exercisable against the claimed donee WEMGO after the transfer of legal title to it.[6]

A conclusion that a donor did not relinquish dominion and control over the subject of a purported gift, and thus that no property was actually contributed, is coterminous with a conclusion that the purported gift was a sham; that is, something that is not what it purports to be. The principle that a claimed gift is a sham transaction where the donor has not divested himself of control over the gifted property was articulated by Judge Learned Hand in 1939.

---

[6]We also held that Grou's right under the contract of sale to direct the transfer of the St. George to Richmond Dance rendered the gift conditional, and because the possibility that the condition would be satisfied was not so remote as to be negligible, no gift was "made" within the meaning of sec. 170(a)(1) and sec. 1.170A-1(e), Income Tax Regs.

**[*13]** All that need appear is that the donor did not intend to divest himself of control over the res, that the donee knew of the donor's intent and assented to it, and that the donor knew of the donee's assent.  If all this is fairly inferable from the relations, the gift, however formal, is a sham * * *

Richardson v. Smith, 102 F.2d 697, 699 (2d Cir. 1939); see also Marshall v. Commissioner, 57 F.2d 633, 634 (6th Cir. 1932), aff'g in part and rev'g in part 19 B.T.A. 1260 (1930); Royce v. Commissioner, 18 T.C. 761, 766-768 (1952); Schwarzenbach v. Commissioner, 4 T.C. 179, 184-185 (1944).

The facts set forth in Fakiris I demonstrate that Grou did not intend to divest itself of control over the St. George, that WEMGO knew of Grou's intent and assented to it, and that Grou knew of WEMGO's assent.  Indeed, circumstantial evidence was not even required for us to make such findings, as the express terms of the contract of sale established them definitively.  While in Fakiris I we did not label Grou's claimed gift of the St. George to WEMGO a sham, our holding that Grou did not relinquish dominion and control over the theater was to the same effect; namely, the formal gift transaction was nonexistent.

What is more important than the label we attached to the claimed gift in Fakiris I is the nature of the dominion and control determination itself, which at its core requires that a transaction "be in reality what it purports to be on its face." Royce v. Commissioner, 18 T.C. at 766.  The question whether a donor has

**[\*14]** surrendered dominion and control arises where, as here, the parties use formalities in an attempt to paper over a transaction to give it the appearance, but not the substance, of a valid gift.  Consequently, and as we have previously observed, the rule that a donor must relinquish dominion and control over the subject of a claimed gift has been expressed by any number of well established substance-over-form principles:

> It is axiomatic that the reach of the income tax law is not to be circumscribed by refinements of legal title.  The rule finds expression in the oft repeated admonitions that taxation is an intensely practical matter, concerned with economic realities; that tax consequences flow from the substance of a transaction rather than from its form; and that command over property or enjoyment of its economic benefits marks the real owner for income tax purposes.  Commissioner v. Court Holding Co., 324 U.S. 331; Helvering v. Clifford, 309 U.S. 331; Gregory v. Helvering, 293 U.S. 465; Corliss v. Bowers, 281 U.S. 376.
> * * *

Royce v. Commissioner, 18 T.C. at 768 (quoting Greene v. Commissioner, 7 T.C. 142, 150 (1946)).

In our view, the determination that a donor has not relinquished dominion and control over the subject of a claimed gift is conceptually analogous to the determination that a partnership is a sham and therefore does not exist for tax purposes.  Both present instances where parties attempt, by adhering to formalities, to create significant tax benefits without a corresponding effect to

[*15] their underlying economic positions.  That is the case here.  Petitioner

attempted to claim significant tax benefits for a charitable contribution, but Grou

never ceded dominion and control over the St. George to the claimed donee.

We therefore conclude that our holdings that Grou did not relinquish

dominion and control over the St. George and that the property actually

contributed (of which there was none) had a value of zero for purposes of

determining the applicability of the section 6662(h) are "inextricably intertwined"

within the meaning of Woods.  To paraphrase:  Petitioner underpaid his tax

because he overstated the value of the property claimed to have been contributed,

and he overstated that value because no gift was actually made; that is, the gift was

a sham.  See Woods, 571 U.S. at 47.  Thus, the "gift", in that there was not one,

reflected property with no value and any underpayment of tax resulting from the

disallowance of petitioner's claimed charitable contribution deduction is

"attributable to" a valuation misstatement within the meaning of section 6662.

That determination, however, raises the question:  What is the "correct

value" of "property" that is claimed to be donated but is not actually donated?  Or,

more precisely:  Is the value that of the property that was reported to have been

contributed, as respondent would have it be, or the value of the property that was

actually contributed?  It follows under section 6662 and Woods that where a

[*16] charitable contribution is characterized as a sham, the correct value of the contributed "property" is zero for purposes of determining the applicability of the gross valuation misstatement penalty because no property was actually contributed.

First, a "Woods-ian" plain language reading of section 6662 supports this conclusion. See Woods, 571 U.S. at 44. Petitioner reported a $3 million noncash charitable contribution and claimed related deductions in connection with Grou's claimed gift of the St. George to WEMGO.[7] We held that for tax purposes no gift was made because Grou did not relinquish dominion and control over the theater. Since no gift was made, petitioner could not legitimately claim to have made a charitable contribution of property in any amount greater than zero. The regulations provide that when the correct value of contributed property is zero and the value claimed is greater than zero, a gross valuation misstatement is deemed to exist. See sec. 1.6662-5(g), Income Tax Regs. We cannot fathom why the same principle does not apply here, where a value is claimed for property that is reported to have been contributed but, in fact, was not. By claiming charitable contribution deductions in amounts greater than zero, when in fact no contribution

_____

[7]As noted in Fakiris I, the reported $3 million noncash charitable contribution represented 60% of the $5 million noncash charitable contribution apparently claimed by Grou, in which petitioner held a 60% interest.

**[\*17]** had been made, petitioner underpaid his tax, and those underpayments were attributable to a gross valuation misstatement.

Second, this plain language reading of section 6662 is bolstered by Woods' holding that the concept of "value" for purposes of the valuation misstatement penalty comprises not only factual assertions, but also threshold legal determinations, such as a finding that a purported gift was a sham. Woods, 571 U.S. at 45; see also Long-Term Capital Holdings, LP v. United States, 150 F. App'x 40, 44 (2d Cir. 2005) (holding that the valuation misstatement penalty "does not differentiate between factual and legal determinations" and can apply "where the transaction is 'recast' for tax purposes using a legal doctrine such as the step transaction or economic substance doctrine"). We determined as a threshold legal matter that no gift was made, and therefore found that the "correct value" of property to be claimed on petitioner's returns as charitable contributions was zero. Cf. Zfass v. Commissioner, slip op. at 11 ("When a transaction lacks economic substance, the correct basis is zero; any amount claimed is a valuation overstatement.").

Consequently, we conclude and hold that the correct value of the property underlying petitioner's claimed charitable contribution deduction for purposes of

[*18] the section 6662(h) penalty is zero, which triggers the gross valuation

misstatement penalty in accordance with the reasoning in Woods.

V.      Inapplicability of RERI Holdings I, LLC and Gemperle

RERI Holdings I, LLC and Gemperle are distinguishable and do not lead to

a contrary result.  In RERI Holdings I, LLC, the Court disallowed a claimed

charitable contribution deduction for the donation of a remainder interest in

property for failure to comply with the substantiation requirements of the

regulations under section 170.  Specifically, the Court pointed to the taxpayer's

failure to attach a fully completed appraisal summary to the return.  In Gemperle

the Court held that the taxpayers were not entitled to charitable contribution

deductions claimed for the donation of a facade easement because the taxpayers

failed to include a copy of a qualified appraisal with the return.  Of paramount

importance here, neither case held that the transfer of the remainder interest or the

facade easement was a sham or lacked economic substance.[8]  In both cases we

---

[8]In RERI Holdings I, LLC, the Commissioner argued, in addition to his assertion that the taxpayer had failed to attach to the return a fully completed appraisal summary of the remainder interest, that the contribution of the remainder interest was part of a transaction that was a sham for tax purposes or lacked economic substance.  Because we agreed with the Commissioner that the charitable contribution deduction was disallowed in its entirety on account of the failure to attach the appraisal summary, we did not consider his sham transaction or lack of economic substance arguments.

**[*19]** proceeded on the assumption that a discernible property right had been validly transferred from the donor to the donee. In other words, some quantum of property rights had been transferred from donor to donee, and the charitable contribution deduction was disallowed for failure to satisfy statutory requirements of substantiation. For that reason, a determination of the value of that quantum of property transferred was necessary to calculate the applicability and amount of the section 6662(h) penalty. The same is not true here; the transfer itself was a sham, with the result that the value of the property claimed to have been contributed is zero for purposes of the penalty.

The same analysis applies with respect to BC Ranch II, L.P. The property donated in that case was a conservation easement and, as with RERI Holdings I, LLC and Gemperle, there was no holding or argument that no easement at all was actually transferred. By contrast, here claimed charitable contribution deductions are disallowed because a gift of the theater did not occur.

VI.     No evidence of value of the property claimed as donated

Finally, we note that, even if we were to conduct the "actual value" analysis of the theater that respondent argues is appropriate, our redetermination of the section 6662(h) penalty would not change. A fundamental legal principle "is the common-sense requirement that the fair market valuation of donated property must

[*20] take into account conditions on the donation that affect the market value of the donated property." Rolfs v. Commissioner, 668 F.3d 888, 892 (7th Cir. 2012), aff'g 135 T.C. 471 (2010); Cooley v. Commissioner, 33 T.C. 223, 225 (1959) ("[P]roperty otherwise intrinsically more valuable which is encumbered by some restriction or condition limiting its marketability must be valued in the light of such limitation."), aff'd per curiam, 238 F.2d 945 (2d Cir. 1960); see also John A. Bogdanski, Federal Tax Valuation, para. 2.01[3][c][vii], at *78 (2020 Westlaw FTVWGL) ("In determining the amount of a charitable contribution deduction, the value of the donated property may be reduced below its pre-donation value, or even wiped out entirely, by conditions imposed as part of the gift.").

The contract of sale transferring the property to WEMGO contained substantial restrictions on WEMGO's use of the property--restrictions so severe that we concluded Grou had not relinquished dominion and control over the property, rendering any purported transfer of the entire fee simple interest in the property (as apparently claimed on Grou's return) a sham. Even if we were to assume contrary to our finding that some modicum of property rights was transferred to WEMGO notwithstanding Grou's retention of rights sufficient to constitute dominion and control, the record is devoid of any evidence supporting a value for whatever could be said to have been transferred to WEMGO. Both

[*21] respondent's expert and petitioner's expert appraised the St. George in fee simple. We find no mention in petitioner's expert's report of the restrictions and conditions imposed by the contract of sale. And while respondent's expert's report acknowledges that "there is a deed restriction prohibiting the resale of the subject property for five years except to Richmond Dance Ensemble Inc.", it is unclear how, if at all, the report calculated the impact of those contract terms on value. For that matter, we find it impossible to reconcile the simultaneous acknowledgment of the "deed restriction", as respondent's expert characterizes it, with an overall appraisal of the property in fee simple. Simply put, we see no expert testimony in the record to support <u>any</u> value for a property interest transferred to WEMGO under the contract of sale.

VII.  <u>Conclusion</u>

Our previous opinion in this case is supplemented in accordance with the foregoing analysis, but in all other respects remains the same.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.